UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street
New York, NY 10004,

FEMHEALTH USA, INC., d/b/a CARAFEM
1156 15th Street, NW
Washington, DC 20005,

MILO WORLDWIDE LLC
301 Yamato Road
Boca Raton, FL 33431,

PEOPLE FOR THE ETHICAL TREATMENT
  OF ANIMALS, INC.
501 Front Street
Norfolk, VA 23510,

              Plaintiffs,

    v.

WASHINGTON METROPOLITAN AREA
  TRANSIT AUTHORITY
600 5th Street, NW
Washington, DC 20001,

PAUL J. WIEDEFELD
General Manager
Washington Metropolitan Area Transit Authority
600 5th Street, NW
Washington, DC 20001,

              Defendants.

No. 1:17-cv-_____

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
(Violation of First and Fourteenth Amendment Rights)

## INTRODUCTION

1.      The Washington Metropolitan Area Transit Authority ("WMATA") operates one of the nation's largest transit systems. Paid advertising in trains, in and on buses, and in Metro stations reaches more than 90% of the people who live and work in the area on a daily basis. After many years of accepting advertisements on a wide range of topics, WMATA adopted new advertising Guidelines in late 2015 and now seeks to sanitize its advertising spaces from messages that might give offense. But "[g]iving offense is a viewpoint," *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (plurality opinion), and the First and Fourteenth Amendments prohibit WMATA from discriminating based on viewpoint when selling advertising space. By rejecting a variety of advertisements submitted by Plaintiffs—ranging from an ad for an FDA-approved medication, to an ad urging a vegan diet, to an ad for a non-fiction book, to the text of the First Amendment itself—WMATA has violated Plaintiffs' First and Fourteenth Amendment rights. And WMATA's new advertising Guidelines, which explicitly or implicitly incorporate such viewpoint discrimination, are unconstitutional for the same reason.

2.      WMATA has also refused to accept advertisements submitted by Plaintiffs that do not violate WMATA's new advertising Guidelines, but were rejected for reasons extrinsic to the advertisements themselves, such as the identity of the advertiser, the advertiser's known or presumed viewpoints, or the advertiser's line of business. Those refusals were unreasonable and therefore violated Plaintiffs' First and Fourteenth Amendment rights. They also violated the fundamental principle that the government must follow its own rules.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1343 because Plaintiffs' claims arise under the Constitution and laws of the United States. The

Court has supplemental jurisdiction of state-law claims under 28 U.S.C. § 1367.

4.      This Court also has jurisdiction over this action pursuant to Section 81 of the

Washington Metropolitan Area Transit Regulation Compact, which provides that the United

States District Courts shall have original jurisdiction over all actions brought by or against the

Washington Metropolitan Area Transit Authority. D.C. Code § 9-1107.01, ¶ 81. In Section 80 of

the Compact, the State of Maryland and the Commonwealth of Virginia affirmatively waived the

application of their Eleventh Amendment immunity to suits against WMATA regarding its

proprietary functions. D.C. Code § 9-1107.01, ¶ 80.

5.      Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) because

the acts and omissions complained of occurred in this District.

6.      This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201

and 2202.

7.      Defendants' constitutional violations are actionable pursuant to 42 U.S.C. § 1983.

## PARTIES

8.      Plaintiff American Civil Liberties Union Foundation ("ACLU") is a nonprofit,

nonpartisan organization that educates the public about civil rights and civil liberties issues and

employs lawyers who provide pro bono legal representation in cases involving civil rights and

civil liberties.

9.      Plaintiff Femhealth USA, Inc., d/b/a Carafem ("Carafem"), is a nonprofit

corporation that provides convenient and professional abortion care and family planning services

through a network of health centers. Carafem specializes in providing an FDA-approved prescription medication regimen to induce miscarriage within the first ten weeks of pregnancy.

10.     Plaintiff MILO Worldwide LLC ("Milo Worldwide") is a corporation through which Milo Yiannopoulos carries out his activities as an author, journalist, and public speaker. MILO Worldwide LLC is the publisher of Milo Yiannopoulos' new book, *Dangerous*.

11.     Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA") is a nonprofit membership corporation. It is the largest animal rights organization in the world, with more than 6.5 million members and supporters. Committed to fighting animal exploitation and asserting animals' rights to have humans consider their best interests and to be free from suffering, PETA particularly advocates against the pain caused to animals by the food, clothing, domestic breeding, and entertainment industries, as well as by laboratory experimentation.

12.     Defendant Washington Metropolitan Area Transit Authority ("WMATA") is a governmental entity created by an interstate compact between Maryland, Virginia, and the District of Columbia. Headquartered in the District of Columbia, WMATA operates the second largest heavy rail transit system, the sixth largest bus network, and the fifth largest paratransit service in the United States, with an annual budget of nearly three billion dollars.

13.     Defendant Paul J. Wiedefeld is the General Manager of WMATA and, as such, its Chief Executive Officer. He is sued in his official capacity. With respect to all actions by WMATA alleged in this Complaint, he acted under color of law.

## FACTS

### Facts relating to WMATA advertising

14.     WMATA sells advertising opportunities in Metrorail stations, in Metrorail cars, and in and on Metrobuses, earning approximately $23 million in advertising revenue in the

current fiscal year. Advertising on WMATA has deep market penetration in the Washington, D.C. metropolitan area. WMATA estimates that its exterior bus advertising alone reaches 90% of the population on a daily basis, and that 98% of the public are familiar with the types of advertising found on buses and trains, and in Metro stations. WMATA's advertising business is a proprietary function.

15.     WMATA uses the services of a large out-of-home media company, Outfront Media, Inc. ("Outfront") to manage its advertising sales and placement. Prospective WMATA advertisers submit proposed advertisements to Outfront and sign contracts with Outfront detailing the type, size, placement, duration, and cost of their advertisements. WMATA is not a party to such contracts, but WMATA, not Outfront, makes the decisions about whether a proposed advertisement complies with WMATA's advertising Guidelines.

16.     Prior to May 28, 2015, WMATA advertising space was available for a wide variety of commercial and non-commercial advertising. Courts had held that WMATA's advertising space was a designated public forum.

17.     On May 28, 2015, in response to the submission of an advertisement WMATA did not wish to accept, WMATA closed its advertising space to "all issue-oriented advertising . . . until the end of the calendar year."

18.     On November 19, 2015, WMATA formally amended its Guidelines Governing Commercial Advertising ("Guidelines"). The new Guidelines restrict the nature and content of advertising that WMATA accepts for its advertising space. Under the new Guidelines, the WMATA advertising forum is purportedly a limited or nonpublic forum. The Guidelines contain fourteen numbered restrictions, four of which are at issue in this action.

No. 4:    "Medical and health-related messages will be accepted only from

government health organizations, or if the substance of the message is

currently accepted by the American Medical Association and/or the Food

and Drug Administration."

No. 9:    "Advertisements intended to influence members of the public regarding an

issue on which there are varying opinions are prohibited."

No. 13:   "Advertisements that support or oppose an industry position or industry

goal without any direct commercial benefit to the advertiser are  prohibited."

No. 14:   "Advertisements that are intended to influence public policy are prohibited."

19.    Guidelines 4 and 13 are explicitly viewpoint-discriminatory. Guideline 4 allows

the viewpoint of the U.S. Food and Drug Administration or the American Medical Association to

be expressed, but not the viewpoints of others, including other well-qualified medical authorities.

Guideline 13 allows an "industry position or industry goal" to be expressed in advertisements

sponsored by those who thereby seek a "direct commercial benefit," but prohibits the expression

of any viewpoints on those topics by speakers whose advertisements are not seeking a "direct

commercial benefit," thereby excluding the viewpoints of all speakers who are not speaking for

their own commercial advantage.

20.    Guidelines 9 and 14 are implicitly viewpoint-discriminatory. They vest WMATA

with unbridled discretion to determine what is or is not "an issue on which there are varying

opinions," and what is or is not "intended to influence public policy." That unguided discretion

authorizes and encourages discriminatory enforcement against controversial or unpopular

viewpoints, and has resulted in discriminatory enforcement against controversial or unpopular

viewpoints.

21.     Guidelines 4, 9, 13, and 14 have been and/or would be applied in a viewpoint-discriminatory manner to reject Plaintiffs' advertisements.

**Facts relating to the ACLU**

22.     In early 2017, the ACLU initiated an advertising campaign to remind the public about what the First Amendment says, and to send the message that it protects Americans who speak languages other than English.

23.     The advertisements associated with the campaign contain the text of the First Amendment in Arabic, English, or Spanish. They include the ACLU's logo over the slogan "We the People."[1]

24.     In March 2017, the ACLU's agent, Emergence Creative, submitted the ACLU's advertisements to Outfront and inquired whether the advertisements could be placed in the WMATA Metrorail system. In response, Outfront informed Emergence Creative on March 27 that WMATA had rejected the advertisements because it "does not take any issue oriented advertising."

25.     On April 4, 2017, the ACLU launched its advertising campaign in New York City's Times Square. ACLU Executive Director Anthony D. Romero stated, "This campaign is intended to remind people that the Constitution is for all of us. It doesn't matter who you are or what language you speak. 'We the People' means everyone."

26.     The ACLU's advertisements have been placed in numerous cities and communities throughout the country, including on bus stop shelters in Washington, D.C., where WMATA buses stop but which are not owned by WMATA.[2] No instances of vandalism or violence have been reported in connection with the display of these advertisements in any place,

---

[1] Attached as Exhibit A.
[2] Attached as Exhibit B.

including D.C. bus shelters. There is no reason to believe that any fewer passengers boarded Metrobuses at these bus stops while the ACLU's advertisements were displayed than at any other time.

27.     On April 19, Emergence Creative again wrote to Outfront to express the ACLU's interest in placing its advertisements in the WMATA Metrorail system. Outfront responded that WMATA would not approve the advertisements, and that "You'll need to dramatically change your creative in order to resubmit." Emergence Creative asked Outfront to obtain a written explanation from WMATA. No such written explanation has been received.

28.     WMATA has accepted other advertisements that are at least equally related to social issues on which there are varying opinions. An advertisement showing a crowd of demonstrators holding signs saying "Black Lives Matter" and "Stand for Justice" would make viewers think about issues such as racial profiling and police misconduct, issues on which members of the public have varying opinions, but such an advertisement was recently accepted and displayed.[3] Advertisements touting the capabilities of new military aircraft would make viewers think about national defense strategy and the military budget, an issue on which members of the public have varying opinions, but such advertisements are routinely accepted and displayed.[4] WMATA also accepts advertisements for gambling casinos[5] and alcoholic beverages,[6] both issues on which members of the public have varying opinions.

29.     WMATA's decision that the ACLU's advertisements related to an "an issue on which there are varying opinions" was not based on any objective criteria or standard, and therefore was unreasonable and resulted in viewpoint-based discrimination.

_____

[3] Attached as Exhibit C.
[4] Attached as Exhibit D.
[5] Attached as Exhibit E.
[6] Attached as Exhibit F.

30.     WMATA's decision to reject the ACLU's advertisements was based on considerations extrinsic to the advertisements themselves.

31.     The ACLU still wishes to place these advertisements in WMATA advertising spaces. The ACLU is suffering irreparable injury during the time its advertisements are not permitted to run on WMATA advertising spaces.

**Facts relating to Carafem**

32.     The physicians at Carafem's clinics regularly prescribe and dispense medical abortion pills, which is an FDA-approved prescription regimen consisting of two medications, mifepristone and misoprostol, taken in sequence 24 to 48 hours apart. Together, these medications induce miscarriage in pregnant patients.

33.     The mifepristone/misoprostol regimen, which is distinct from birth control or emergency contraception pills, is not available through pharmacies or at most physicians' offices. It was first approved by the FDA in 2000. New labeling, approved by the FDA in 2016, allows for its use through 10 weeks of gestation. The regimen is sometimes described as the "10-Week-After-Pill."

34.     In October 2015, Carafem submitted an advertisement to WMATA with the text: "Abortion. Yeah, we do that. Birth Control? Yeah. We do that underline. Affordable. Convenient. 24/7 Support."[7] WMATA reviewed and approved the advertisement on or about October 27, 2015, and it was displayed in WMATA advertising spaces.

35.     In December 2016, Carafem submitted an advertisement to WMATA to be run in Metrorail stations. The advertisement featured a large image of a white pill. Carafem's name

---

[7] Attached as Exhibit G.

appears at the top, and below it, "10-Week-After-Pill." Below the image of the pill, the advertisement reads "For Abortion Up to 10 Weeks. $450. Fast. Private. Carafem.org."[8]

36.     On December 14, WMATA's agent, Outfront, communicated to Carafem that the advertisement had been rejected by WMATA "due to guidelines #4 & #9," and asked "has this drug been approved by either the FDA or the AMA?" Carafem responded that the drug regimen was FDA-approved, and that information was sent to WMATA. The next day, Outfront informed Carafem that WMATA's "response is still no. Quite honestly, we do not see why this was not approved, your ad doesn't appear to be in violation of any of the guidelines, especially #4 & #9 that was the basis for the rejection." Outfront suggested that Carafem should contact WMATA directly. Carafem did so.

37.     On December 20, 2016, a WMATA official responded to Carafem that, "because your ad addresses the controversial topic of abortion and promotes a particular abortion product, it is issue-oriented. Moreover, to the extent that your ad states that Carafem is fast, it makes a medical statement in violation of Guideline 4, which establishes that these types of statements/messages will only be accepted from government health organizations."

38.     Guideline 4 does not provide that medical messages will be accepted only from government health organizations; the American Medical Association is not a government health organization. The American Medical Association has described the use of mifepristone to end an early pregnancy as "safer, faster, and less expensive." In most cases, a miscarriage will occur within hours after taking the second medication.

39.     In January 2017, Carafem asked WMATA's Board of Directors to reverse the November 20 decision. The Board declined to do so, and the advertisements were not displayed.

---

[8] Attached as Exhibit H.

40.     The advertisement submitted by Carafem in December 2016 did not violate

Guideline 4, because the medical abortion regimen was (and is) approved by the FDA, and the

AMA has endorsed "the substance of the message" that it is fast.

41.     Under the current Guidelines, WMATA has continued to accept a large variety of

medical- or health-related messages that violate Guideline 4 at least as much the advertisement

submitted by Carafem.  A January 2017 advertisement by the Reston Hospital Center touted that

its Emergency Room "offers fast, expert care 24/7."[9] On information and belief, neither the FDA

nor the AMA has "accepted" the message that the Reston Hospital Center's Emergency Room in

fact provides "fast" and "expert" care at all times. A July 2017 advertisement by the Aetna

Foundation illustrated five "Healthy Habits of Emotional Well-Being."[10] On information and

belief, neither the FDA nor the AMA has "accepted" the message that the habits illustrated on

the Aetna advertisement are the "five healthy habits of emotional well-being." If Carafem's

advertisement violated Guideline 4, then these and, on information and belief, many other

advertisements that have been accepted by WMATA also violated Guideline 4.

42.     Applying Guideline 4 to reject Carafem's advertisement was viewpoint-

discriminatory. If WMATA had recognized that the American Medical Association had accepted

the substance of the message that the advertised product was "fast," the advertisement would not

have been rejected under Guideline 4. Carafem's well-qualified viewpoint was rejected because

it was not believed to be the AMA's viewpoint.

43.     The advertisement submitted by Carafem in December 2016 did not violate

Guideline 9. Nothing in the advertisement was "intended to influence members of the public

regarding an issue on which there are varying opinions." The advertisement simply presents

---

[9] Attached as Exhibit I.
[10] Attached as Exhibit J.

facts. The advertisement does not attempt to persuade anyone about anything. If the content of

Carafem's advertisement is viewed as a violation of Guideline 9, then any advertisement for a

product or service of which some riders disapprove is equally violative of Guideline 9.

44.     WMATA accepts advertisements for alcoholic beverages,[11] a product of which

some Metro riders disapprove. Other riders, even if they do not disapprove of alcoholic

beverages, disapprove of public advertising for alcoholic beverages because it tempts individuals

suffering from alcoholism, and individuals too young to legally purchase or use alcoholic

beverages. WMATA accepts advertisements for Squirt.org, an online service for gay and

bisexual men looking "to hookup [have casual sex] today."[12] Some Metro riders disapprove of

that service. Squirt.org also caters to gay men seeking to "cruise"—"the ancient art of men

seeking men for anonymous sex in public." https://www.squirt.org/gay-cruising. Some Metro

riders disapprove of that activity.

45.     On information and belief, WMATA would accept advertisements reflecting

different viewpoints on the topic or human reproduction, such as advertisements for maternity

hospitals, fertility clinics, obstetricians, and vasectomies.

46.     WMATA's decision to reject Carafem's advertisement under Guideline 9 on the

ground that it related to the "topic of abortion" was not based on any objective criteria or

standard, and therefore resulted in viewpoint-based discrimination.

47.     WMATA's decision to reject Carafem's advertisement was based on

considerations extrinsic to the advertisement.

---

[11] *See* Exhibit F.
[12] Attached as Exhibit K.

48.     Carafem still wishes to place the same advertisement, and similar advertisements for its services, in WMATA advertising spaces. Carafem is suffering irreparable injury during the time its advertisements are not permitted to run on WMATA advertising spaces.

**Facts relating to MILO Worldwide LLC**

49.     Milo Yiannopoulos is a public figure who is known for his dissident opinions about contemporary issues. Part of the distinct media personality and brand of Mr. Yiannopoulos and of Plaintiff Milo Worldwide is to engage provocatively with various matters of public concern.

50.     In June 2017, Milo Worldwide contacted WMATA's agent, Outfront, about placing advertisements for Mr. Yiannopoulos' new book, *Dangerous*, in the Metrorail system. The advertisements were to be timed to bracket the book's publication date, July 4, 2017.

51.     The advertisements displayed only Mr. Yiannopoulos's face, the book's title, the text "Pre-Order Now," and, across the top, one of four short quotations from different book reviews. The four quotations and their sources were: (a) "The most hated man on the Internet" – The Nation; (b) "The ultimate troll" – Fusion; (c) "The Kanye West of Journalism" – Red Alert Politics; and (d) "Internet Supervillain" – Out Magazine.[13]

52.     On June 14, 2017, Outfront replied to Milo Worldwide's inquiry with a contract for a four-week advertisement campaign, to run from June 26 to July 23, 2017. Under the contract's terms, Milo Worldwide would pay $25,000 for 45 large (46" x 60") posters across the Metrorail system, and Outfront would include a bonus of 200 car cards (22" x 21") placed in train cars on a space-available basis.

---

[13] Attached as Exhibit L.

53.     The New York Metropolitan Transit Authority accepted the same advertisements,
and they have been displayed in the New York subway system since approximately June 26,
2017.[14] The same advertisements were also displayed by the Chicago Transit Authority from
approximately July 3 to July 30, 2017. Both transit agencies have policies prohibiting "political"
advertisements.

54.     On June 21, Milo Worldwide executed the contract with Outfront and paid the
$25,000 fee. It also executed a second contract for production of the advertisements, paying
$2,690 for that service, for a total of $27,690. The advertisements were posted in 45 locations in
D.C. Metrorail stations and in an unknown number of Metrorail cars on June 26, 2017.

55.     Shortly thereafter, some WMATA riders began complaining about the
advertisements, both on social media and directly to WMATA.

56.     Initially, WMATA's Customer Relations staff responded to complaints with the
following message: "The display of this ad is consistent with Metro's policy of remaining
content-neutral when accepting advertising. Although Metro understands that feelings and
perceptions will vary among individuals within the community, we cannot reject advertising
because some find it inappropriate or offensive."

57.     A few days later, on July 6, Outfront informed Milo Worldwide that the
advertisements "are being removed at the direction of the Washington Metropolitan Area Transit
Authority. They're claiming you cannot run this as it violates guidelines #9 and #14." Outfront
informed Milo Worldwide that it had expressed "concern to the fairness of this ruling," but
"must be cautious to our partnership [with WMATA]." When pressed by news media to explain
what about the ads violated the guidelines, WMATA declined to explain.

---

[14] A photograph of one advertisement posted in the New York subway is attached as Exhibit M.

58.　On or about July 6, the Milo Worldwide advertisements were removed from Metrorail stations and Metrorail cars.

59.　Outfront asked Milo Worldwide to accept a rescission of its contract and a refund of its payments. Milo Worldwide refused, stating "we consider this to be a violation of our First Amendment rights."

60.　The Milo Worldwide advertisements contained no content intended to influence members of the public regarding an issue on which there are varying opinions, and did not violate Guideline 9.

61.　The Milo Worldwide advertisements contained no content intended to influence public policy, and did not violate Guideline 14.

62.　WMATA has accepted and posted other advertisements that violate Guidelines 9 and 14 at least as much as the advertisements by Milo Worldwide.  In July 2017, advertisements for a play called "The Originalist" were displayed in Metrorail cars.[15] Many viewers of the advertisement are aware that the play is about the late Supreme Court Justice Antonin Scalia, and contains many passages in which the Scalia character advocates his conservative judicial philosophy. If the Milo Worldwide advertisements violate Guidelines 9 and 14, the Originalist advertisement also does so. In July 2017, advertisements for a movie called *Girls Trip* were displayed in Metrorail stations.[16] Judging by the advertisement, some people would find the movie (if not the advertisement itself) morally or politically offensive.

63.　WMATA removed the Milo Worldwide advertisements that it had previously accepted and publicly defended because some riders took offense at the fact that Mr. Yiannopoulos was being allowed to advertise his book. The Milo Worldwide advertisements

[15] Attached as Exhibit N.
[16] Attached as Exhibit O.

were rejected based on the identity of the author and/or the perceived viewpoint of the book or its author.

64.     WMATA would have accepted, and would not subsequently have rejected, comparably-designed advertisements for books written by other authors. WMATA's rejection of Milo Worldwide's advertisement was based on considerations extrinsic to the advertisement, including the identity of the book's author and his viewpoints on various issues.

65.     The Milo Worldwide advertisements on WMATA and elsewhere were apparently commercially successful. *Dangerous* was #4 or #5 on the New York Times hardcover non-fiction best-seller list for the most recent three weeks (July 23, 30, and August 6, 2017). It has been on the Wall Street Journal non-fiction best-seller list for the most recent four weeks, reaching #2 for the week ended July 9 and #1 for the week ended July 23. It has also been on the Publisher's Weekly hardcover non-fiction best seller list for the most recent four weeks, reaching #1 in the week of July 24. On the Amazon.com non-fiction best-seller list it was #5 for the week of July 9 and #9 for the week of July 23. Its entire first print run has already shipped, and a second printing has begun to be shipped.

66.     Publicity for a new book is most important around its publication date, when public interest is likely to be at its highest. Every day these advertisements were down, Milo Worldwide suffered an irreparable loss in publicity for the book, and in sales.

67.     Milo Worldwide wants its advertisements to be re-posted. Milo Worldwide continues to suffer irreparable injury during the time its advertisements are not permitted to run on WMATA advertising spaces.

**Facts relating to PETA**

68.     Public advertising is one of the major ways in which PETA carries out its advocacy campaigns. Prior to WMATA's adoption of its new Guidelines, PETA had run paid advertising campaigns on WMATA, including a campaign in September and October 2014 opposing the use of live monkeys for testing at the National Institutes of Health.

69.     On October 27, 2016, PETA submitted an advertisement to WMATA's agent, Outfront, for placement in WMATA's stations and vehicles. The advertisement depicted a pig, with accompanying text reading, "I'm ME, Not MEAT. See the Individual. Go Vegan."[17] The advertisement was intended to raise viewers' awareness that animals have consciousness and to encourage viewers not to purchase or eat animal food products.

70.     On November 1, 2016, Outfront informed PETA that the advertisement would likely be rejected because it included the "Go Vegan" message. Outfront also informed PETA that removing "Go Vegan" and/or adding a "commercial value" such as a donation solicitation or an offer to purchase PETA's gift products might lead to WMATA's acceptance of the advertisement.

71.     On November 8, 2016, Outfront informed PETA that WMATA had rejected the advertisement based on Guideline 9. As Outfront's earlier message suggested, the advertisement also violated Guideline 13, as it opposed the food industry's position that people should eat meat, fish, poultry, dairy products, and other non-vegan foods, "without any direct commercial benefit to" PETA.

72.     In December 2016 PETA was able to place an advertisement, identical in every respect except in its dimensions, on eleven bus shelters in the District of Columbia at which

---

[17] Attached as Exhibit P.

WMATA's buses stop. Those shelters are not owned by WMATA. On information and belief, there were no instances of vandalism directed at any of these advertisements. There is no reason to believe that any fewer passengers boarded Metrobuses at these bus stops while PETA's advertisements were displayed than at any other time.

73.    On November 18, 2016, PETA submitted two other advertisements to WMATA through its agent Outfront. One depicted a cow and her calf, with accompanying text reading, "Not your mom? Not your milk! DeCalf Your Coffee! Choose almond or soy milk."[18] The advertisement was intended to make viewers aware that consuming dairy products is unnatural and to encourage viewers to purchase and use substitutes. The second advertisement depicted a veteran facing the viewer, with accompanying text reading, "'I didn't serve my country to stab goats.' Department of Defense: End 'Live Tissue Training.'"[19] The advertisement was intended to make viewers aware of the victimization of living animals in military trauma training and to lead both military decision-makers and concerned civilians to work to end the use of animals in that method of training.

74.    On November 22, 2016, Outfront informed PETA that WMATA had rejected both of these advertisements based on Guidelines Nos. 9 and 14.

75.    On February 8, 2017, PETA submitted three additional advertisements to WMATA through its agent Outfront. These advertisements variously depicted a pig, a chicken, or a cow, and contained the text, "I'm ME, Not MEAT. See the Individual. Go Vegan."[20] The submission explained that additional text would be added, saying, "Going Vegan Reduces Risk of Suffering from Heart Disease and Cancer, and It Saves Lives." On February 13, 2017,

---

[18] Attached as Exhibit Q.
[19] Attached as Exhibit R.
[20] Attached as Exhibit S.

Outfront informed PETA that WMATA had rejected these advertisements as issue-oriented and "not permissible by WMATA guidelines." These advertisements also violated Guidelines 4 and 13.

76.     WMATA has accepted and displayed many advertisements that are intended to influence riders to buy, do, and believe things that are at odds with PETA's viewpoint on humans' proper relationship with animals, such as eating animal-based foods,[21] wearing clothing made from animals, and attending circus performances at which animals are made to perform in unnatural ways.[22] Those viewpoints are accepted, but PETA's opposing viewpoints on these issues are censored.

77.     PETA still wishes to place the same advertisements, and similar advertisements, in WMATA advertising spaces. PETA is suffering irreparable injury during the time its advertisements are not permitted to run on WMATA advertising spaces.

## CLAIMS FOR RELIEF

78.     In the following Claims, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment, and references to the Fifth Amendment include the comparable provisions of the Fourteenth Amendment.

### I. First Amendment: Facial Unconstitutionality (Viewpoint Discrimination)

79.     WMATA Guideline 4 allows the viewpoint of the U.S. Food and Drug Administration or the American Medical Association to be expressed, but not the viewpoints of others, including other expert medical authorities. This discrimination based on viewpoint applies to all medical- and health-related advertising submitted to WMATA. Accordingly, Guideline 4 violates the First Amendment on its face.

---

[21] Attached as Exhibit T.
[22] Attached as Exhibit U.

79.     WMATA Guideline 13 allows an "industry position or industry goal" to be expressed in advertisements sponsored by those who thereby seek a "direct commercial benefit," but prohibits the expression of any viewpoints on those topics by speakers whose advertisements are not seeking a "direct commercial benefit," thereby excluding the viewpoints of all speakers who are not speaking for their own commercial advantage. This discrimination based on viewpoint, and on speaker identity unrelated to the purpose of the forum, applies to all advertising submitted to WMATA that relates to an "industry position or industry goal." Accordingly, Guideline 13 violates the First Amendment on its face.

**II. First Amendment: Facial Unconstitutionality (Unfettered Discretion)**

80.     WMATA Guideline 9 vests WMATA with unfettered discretion to determine what is or is not "an issue on which there are varying opinions." That unguided discretion authorizes and encourages subjective, discriminatory enforcement against unpopular or non-mainstream viewpoints, and it has been applied to exclude unpopular or non-mainstream viewpoints. This subjective, unfettered discretion, and the resulting viewpoint discrimination, applies to all advertising submitted to WMATA. Accordingly, Guideline 9 violates the First Amendment on its face.

81.     WMATA Guideline 13 vests WMATA with unfettered discretion to determine what is or is not an "industry position or industry goal." That unguided discretion authorizes and encourages subjective, discriminatory enforcement against unpopular or non-mainstream viewpoints. This subjective, unfettered discretion applies to all advertising submitted to WMATA. Accordingly, Guideline 13 violates the First Amendment on its face.

82.     WMATA Guideline 14 vests WMATA with unfettered discretion to determine what is or is not "intended to influence public policy." That unguided discretion authorizes and

encourages subjective, discriminatory enforcement against unpopular or non-mainstream viewpoints, and it has been applied to permit advertising reflecting viewpoints conforming to existing public policy while excluding advertising reflecting viewpoints at odds with existing public policy. This discrimination based on viewpoint applies to all advertising submitted to WMATA that relates to matters of public policy. Accordingly, Guideline 14 violates the First Amendment on its face.

### III. Fifth Amendment: Facial Unconstitutionality (Vagueness)

83.     WMATA Guidelines 9, 13, and 14 are void for vagueness because the line between permitted and prohibited speech is not clearly defined. Neither advertisers, WMATA administrators, or judges can reliably determine which advertisements comply with those Guidelines and which violate them.

### IV. First Amendment: Viewpoint- or Speaker-Based Unconstitutionality as Applied

84.     WMATA's rejection of Carafem's advertisement on the ground that it violated Guideline 4 because it contained a medical or health-related message that was not in accord with the views of the FDA or the AMA violated Carafem's right to be free from viewpoint-based discrimination.

85.     WMATA's rejection of Carafem's advertisement on the ground that it violated Guideline 4 regarding medical and health-related messages, while accepting and displaying many other advertisements presenting medical and health-related messages that are not in accord with the views of the FDA or the AMA, violated Carafem's right to be free from viewpoint-based or speaker-based discrimination.

86.     WMATA's rejection of Carafem's advertisement on the ground that it violated Guideline 9, when WMATA has accepted or would accept numerous advertisements intended to

influence members of the public medical and health-related issues, including issues relating to human reproduction, on which there are varying opinions, violated Carafem's First Amendment right to be free from viewpoint-based or speaker-based discrimination.

87.    WMATA's rejection of Milo Worldwide's advertisement on the ground that it violated Guideline 9, when WMATA has accepted numerous advertisements for other books, plays, and movies which themselves are or may be intended to influence readers or watchers regarding issues on which there are varying opinions, violated Milo Worldwide's right to be free from viewpoint-based or speaker-based discrimination.

88.    WMATA's rejection of Milo Worldwide's advertisement on the ground that it violated Guideline 14, when WMATA has accepted numerous advertisements sponsored by advertisers who seek to influence public policy, violated Milo Worldwide's right to be free from viewpoint-based or speaker-based discrimination.

89.    WMATA's rejection of Milo Worldwide's advertisement, because some individuals objected to the advertisement of a book written by a person with whose views they disagreed, violated Milo Worldwide's right to be free from viewpoint-based or speaker-based discrimination.

90.    WMATA's rejection of PETA's advertisements on the ground that they violated Guideline 9, when WMATA has accepted numerous advertisements intended to influence members of the public on issues on which PETA's advertisements presented PETA's differing opinions, violated PETA's right to be free from viewpoint-based or speaker-based discrimination.

91.    WMATA's rejection of PETA's advertisements on the ground that they violated Guideline 14, when WMATA has accepted numerous advertisements sponsored by advertisers

who seek to influence public policy on issues on which PETA's advertisements presented

PETA's differing views, violated PETA's right to be free from viewpoint-based or speaker-based

discrimination.

### V. First Amendment: Unreasonable Application as to Plaintiffs

92.     Carafem's advertisement did not violate Guideline 4. The "Ten-Week-After Pill"

is approved by the FDA for the advertised use. The statement that the pill works fast has been

accepted in substance by the AMA. WMATA's refusal to accept and display that advertisement

on the ground that it violated Guideline 4 was unreasonable, in violation of Carafem's First

Amendment rights.

93.     Carafem's advertisement did not violate Guideline 9. The advertisement was

intended to inform consumers of a product and service that they might wish to purchase, and not

to change anyone's mind about abortion. WMATA's refusal to accept and display that

advertisement on the ground that it violated Guideline 9 was unreasonable, in violation of

Carafem's First Amendment rights.

94.     Milo Worldwide's advertisement did not violate Guideline 9. The advertisement

was intended to inform consumers of a new book that they might wish to purchase, and not to

influence viewers on any issue. WMATA's refusal to accept and display that advertisement on

the ground that it violated Guideline 9 was unreasonable, in violation of Milo Worldwide's First

Amendment rights.

95.     Milo Worldwide's advertisement did not violate Guideline 14. The advertisement

was intended to inform consumers of a new book that they might wish to purchase, and not to

influence public policy on any issue. WMATA's refusal to accept and display that advertisement

on the ground that it violated Guideline 14 was unreasonable, in violation of Milo Worldwide's First Amendment rights.

96.     WMATA's refusal to accept and display the ACLU, Carafem, and Milo Worldwide advertisements based on considerations extrinsic to the advertisements was unreasonable, in violation of Plaintiffs' First Amendment rights.

## VI. WMATA's Failure to Follow its Own Regulations

98.     Carafem's advertisement did not violate Guidelines 4 or 9. By refusing to accept and display that advertisement on the ground that it violated those Guidelines, WMATA failed to follow its own regulations, in violation of the "*Accardi* doctrine."

99.     MILO Worldwide LLC's book advertisement did not violate Guidelines 9 or 14. By refusing to accept and display that advertisement on the ground that it violated those Guidelines, WMATA failed to follow its own regulations, in violation of the "*Accardi* doctrine."

## REQUESTED RELIEF

Wherefore, Plaintiffs respectfully request that the Court

A.     DECLARE that Defendants' rejection of the advertisements submitted by Carafem in December 2016 was an unreasonable and improper application of WMATA's Guidelines Governing Commercial Advertising.

B.     DECLARE that Defendants' rejection of the advertisements submitted by Milo Worldwide in June 2017 was an unreasonable and improper application of WMATA's Guidelines Governing Commercial Advertising.

C.     DECLARE that Defendants' rejection of the advertisements submitted by each of the Plaintiffs violated the Plaintiff's rights under the First Amendment.

D.      ORDER Defendants to accept the advertisements previously submitted by each

Plaintiff, and to display them in WMATA advertising spaces in accordance with customary

WMATA advertising practices, other than the Guidelines.

E.      DECLARE that each of Guidelines 4, 9, 13, and 14 of WMATA's Guidelines

Governing Commercial Advertising is unconstitutional on its face.

F.      ENJOIN Defendants, their employees, agents, successors and assigns, and all

persons acting in concert with them, from continuing to enforce Guidelines 4, 9, 13, and 14 of

WMATA's Guidelines Governing Commercial Advertising against the Plaintiffs, or against any

other person.

G.      AWARD to Plaintiffs their costs and reasonable attorneys' fees in this action.

H.      GRANT such other and further relief as to the Court appears just and proper.

August 9, 2017                                    Respectfully submitted,

                                                  /s/ *Arthur B. Spitzer*
                                                  _____
                                                  Arthur B. Spitzer (D.C. Bar No. 235960)
                                                  Scott Michelman (D.C. Bar No. 1006945)
                                                  American Civil Liberties Union Foundation
                                                    of the District of Columbia
                                                  4301 Connecticut Avenue, N.W. Suite 434
                                                  Washington, DC 20008
                                                  (202) 457-0800
                                                  aspitzer@acludc.org

                                                  Lee Rowland
                                                  Brian Hauss
                                                  American Civil Liberties Union Foundation
                                                  125 Broad Street, 18th floor
                                                  New York, NY 10004
                                                  (212) 549-2500
                                                  lrowland@aclu.org

                                                  Leslie Mehta
                                                  American Civil Liberties Union Foundation
                                                    of Virginia

701 East Franklin Street, Suite 1412
Richmond, VA 23219
(804) 644-8022
lmehta@acluva.org

*Attorneys for Plaintiffs*

Jeffrey P. Weingart
Stephen B. Meister
Meister Seelig & Fein LLP
125 Park Avenue – 7th Floor
New York, New York 10017
(212) 655-3500

*Of Counsel to Plaintiff MILO Worldwide LLC*

Gabriel Z. Walters (D.C. Bar No. 1019272)
PETA Foundation
1536 16th Street, NW
Washington, DC 20036
(202) 483-7382
gabew@petaf.org

*Attorney for Plaintiff People for the*
*Ethical Treatment of Animals, Inc.*