**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN CIVIL LIBERTIES UNION FOUNDATION,** | § § § | |
| **FEMHEALTH USC, INC., d/b/a CARAFEM,** | § § § | |
| **MILO WORLDWIDE LLC,** | § § | |
| **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 1:17-cv-01598-TSC** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al.,** | § § § § | |
| **Defendants.** | § § | |

**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT..................................................................................................1

FACTUAL BACKGROUND .................................................................................................3

      A.     WMATA Closes Its Advertising Space and Adopts Advertising
           Guidelines. .................................................................................................3

      B.     WMATA Rejects Plaintiffs' Ads. ...............................................................4

      C.     Plaintiffs Sue WMATA and the Court Denies Plaintiff's Milo
           Worldwide's Request for Preliminary Injunction. .......................................6

ARGUMENT ........................................................................................................................7

    I.     STANDARDS FOR RULE 12(C) MOTION FOR JUDGMENT ON THE
          PLEADINGS. ..............................................................................................7

    II.    PLAINTIFF MILO WORLDWIDE'S CLAIMS ARE MOOT. .............................8

    III.   SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS AGAINST
          WMATA...................................................................................................10

    IV.   THE SIXTH CLAIM FOR RELIEF SHOULD BE DISMISSED
          BECAUSE THE *ACCARDI* DOCTRINE DOES NOT APPLY TO
          WMATA...................................................................................................15

    V.    PLAINTIFFS LACK STANDING TO CHALLENGE GUIDELINE 13.............17

CONCLUSION....................................................................................................................19

i

## TABLE OF AUTHORITIES

**CASES**

*ACLU Found. v. Wash. Metropolitan Area Transit Auth.*,
  303 F. Supp. 3d 11 (D.D.C. 2018) ........................................................... 7

*Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Regional Transp.*,
  698 F.3d 885 (6th Cir. 2012) ................................................................. 13

*American Freedom Defense Initiative v. WMATA*,
  901 F.3d 356 (D.C. Cir. 2018) ............................................................ 3, 7

*Archdiocese of Washington v. WMATA*,
  897 F.3d 314 (D.C. Cir. 2018) ..................................................... *passim*

*Armstrong v. FAA*,
  515 F.3d 1294 (D.C. Cir. 2008) ............................................................. 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................ 8, 19

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) ........................................................... 12

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
  435 U.S. 78 (1978) .............................................................................. 16

*Beebe v. WMATA*,
  129 F.3d 1283 (D.C. Cir. 1997) ........................................................... 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 19

*Burkhart v. WMATA*,
  112 F.3d 1207 (D.C. Cir. 1997) ........................................................... 12

*C.G.B. v. Wolf*,
  464 F. Supp. 3d 174 (D.D.C. 2020) ..................................................... 16

*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
  451 F.3d 1257 (11th Cir. 2006) ........................................................... 18

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................................ 9

*Cope v. Scott*,
  45 F.3d 445 (D.C. Cir. 1995) .............................................................. 12

*Covenant Media of S.C., LLC v. City of North Charleston,*
    493 F.3d 421 (4th Cir. 2007) ............................................................................ 18

*Ex Parte Young,*
    209 U.S. 123 (1908) ........................................................................................... 2

*Hess v. Port Authority Trans-Hudson Corp.,*
    513 U.S. 30 (1994) ............................................................................................ 11

*Independence Inst. v. FEC,*
    216 F. Supp. 3d 176 (D.D.C. 2016) ............................................................. 9, 10

*KiSKA Const. Corp. v. WMATA,*
    321 F.3d 1151 (D.C. Cir. 2003) ............................................................. 12, 13, 14

*Lehman v. City of Shaker Heights,*
    418 U.S. 298 (1974) ......................................................................................... 13

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ......................................................................................... 17

*McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial*
    *Conference of the U.S.,*
    264 F.3d 52 (D.C. Cir. 2001) ............................................................................. 8

*Murphy v. Dep't of Air Force,*
    326 F.R.D. 47 (D.D.C. 2018) ............................................................................. 7

*Newdow v. Roberts,*
    603 F.3d 1002 (D.C. Cir. 2010) .................................................................... 9, 10

*Old Town Trolley Tours of Wash., Inc. v. WMATA,*
    129 F.3d 201 (D.C. Cir. 1997) ......................................................................... 11

*Osorio v. Gallo,*
    No. 3:19-CV-151 (VAB), 2020 WL 1531300 (D. Conn. Mar. 31, 2020) ............... 16

*Oviedo v. WMATA,*
    948 F.3d 386 (D.C. Cir. 2020) ......................................................................... 11

*Padula v. Webster,*
    822 F.2d 97 (D.C. Cir. 1987) ........................................................................... 15

*Paleteria La Michoacana, Inc v. Productos Lacteos Tocumbo S.A. De C.V.,*
    69 F. Supp. 3d 175 (D.D.C. 2014) ..................................................................... 9

*People for the Ethical Treatment of Animals, Inc. v. United States Fish & Wildlife Serv.,*
    59 F. Supp. 3d 91 (D.D.C. 2014) ....................................................................... 8

*Planned Parenthood of Wis., Inc. v. Azar,*
    942 F.3d 512 (D.C. Cir. 2019) ........................................................................ 9, 10

*Price v. Barr,*
    No. CV 19-3672 (CKK), 2021 WL 230135 (D.D.C. Jan. 22, 2021) ......................................... 7

*Prime Media, Inc. v. City of Brentwood,*
    485 F.3d 343 (6th Cir. 2007)........................................................................... 18

*Rhodes v. Superior Court of D.C.,*
    No. CV 17-0698 (JDB), 2018 WL 4828404 (D.D.C. Oct. 4, 2018) ........................................ 8

*Ridley v. Mass. Bay Transp. Auth.,*
    390 F.3d 65 (1st Cir. 2004) ........................................................................... 13

*Schneider v. Chandler,*
    No. 16CV6560 (DLC), 2018 WL 770395 (S.D.N.Y. Feb. 7, 2018) ......................................... 16

*Spirit of Aloha Temple v. Cnty. of Maui,*
    384 F. Supp. 3d 1231 (D. Haw. 2019) .................................................................. 18

*Steenholdt v. FAA,*
    314 F.3d 633 (D.C. Cir. 2003) ........................................................................ 15

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014).................................................................................. 17

*Thomas Brooks Chartered v. Burnett,*
    920 F.2d 634 (10th Cir. 1990) ........................................................................ 16

*United States ex rel. Accardi v. Shaughnessy,*
    347 U.S. 260 (1954).............................................................................*passim*

*United States v. Gaubert,*
    499 U.S. 315 (1991).................................................................................. 12

*Vanover v. Hantman,*
    77 F. Supp. 2d 91 (D.D.C. 1999) ...................................................................... 16

*Watters v. WMATA,*
    295 F.3d 36 (D.C. Cir. 2002) ......................................................................11, 12

*Webster v. Doe,*
    486 U.S. 592 (1988).................................................................................. 16

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989)....................................................................................11

iv

**STATUTES**

42 U.S.C. § 1983 .................................................................................................10, 11, 17

D.C. Code § 9-1107.1 ..................................................................................... 17

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure (3d ed. 2004)........................................................ 7, 8

M. Ridgeway, Interstate Compacts: A Question of Federalism (1971).........................................11

**PRELIMINARY STATEMENT**

Plaintiffs American Civil Liberties Union Foundation ("ACLU"), Femhealth USA, Inc. dba Carafem ("Carafem"), Milo Worldwide LLC ("Milo Worldwide"), and People for the Ethical Treatment of Animals ("PETA") have sued Defendant Washington Metropolitan Area Transit Authority ("WMATA") and its General Manager, Paul J. Wiedefeld, over WMATA's advertising policies. Each Plaintiff submitted ads that were rejected under WMATA's Guidelines Governing Commercial Advertising ("Guidelines").

In this Motion for Judgment on the Pleadings, WMATA does not ask this court to rule on the constitutionality of the Guidelines, but to grant judgment on specific claims or parties to narrow the scope of further litigation. Specifically, WMATA asks this court to: (1) grant judgment on the claims of Milo Worldwide which are now moot; (2) grant judgment in favor of WMATA on all claims because it is immune from suit under the doctrine of sovereign immunity; (3) grant judgment on the Sixth Claim for Relief on the grounds that the basis for that claim – the failure of an agency to follow its own regulations under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) – does not apply to Defendants; and (4) dismiss Plaintiffs' challenge to Guideline 13 for lack of standing.

First, Milo Worldwide's claims are moot because the Complaint alleges that the advertisements were needed for several weeks around the publication of Milo Yiannopoulos' book *Dangerous* in 2017. That period has long since passed, so this court cannot provide meaningful relief. Moreover, Milo Worldwide cannot establish that this court should apply the exception for mootness for claims that are likely to recur yet evade review. Milo Worldwide did not seek review of this court's denial of a preliminary injunction so it cannot claim the issue is

likely to evade review and, in any event, does not allege that Milo Worldwide will seek to re-run the advertisements.

Second, Plaintiffs' claims against WMATA are barred by the doctrine of sovereign immunity.[1] WMATA is an interstate compact agency created by Maryland, Virginia, and the District of Columbia and each jurisdiction conveyed its sovereign immunity to WMATA. Although Section 80 of the WMATA Compact provides a limited waiver of immunity for certain contracts and torts performed in a "proprietary function," Plaintiffs do not assert contracts or torts claims and the waiver does not apply to WMATA's application of its Guidelines. Decisions made about the creation and application of the Guidelines are discretionary and subject to policy judgments. The Guidelines, therefore, are considered government functions and immune from challenge.

Third, the *Accardi* doctrine on which Plaintiffs base their Sixth Claim for Relief applies only to federal agencies subject to the Administrative Procedure Act. WMATA, as the creation of an interstate compact, is not a federal agency and is not subject to the Administrative Procedures Act. Therefore, it cannot be liable for violating the *Accardi* doctrine.

Fourth, Plaintiffs lack standing to challenge Guideline 13, which prohibits ads for or against an industry position or industry goal without direct commercial benefit to the advertiser. The Complaint does not allege that any ads were rejected under that Guideline.

Accordingly, this Motion for Judgment on the Pleadings should be granted.

---

[1] WMATA recognizes that an action for injunctive relief may be maintained against Defendant Wiedefeld pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), though he is otherwise subject to sovereign immunity for acts taken in his official capacity.

## FACTUAL BACKGROUND

**A.    WMATA Closes Its Advertising Space and Adopts Advertising Guidelines.**

WMATA operates one of the nation's largest transit systems, serving customers in Maryland, Virginia, and the District of Columbia.  Complaint ¶¶ 1, 12.  To raise revenue, it sells advertising space in Metrorail stations, in Metrorail cars, and in and on Metrobuses.  *Id.* ¶ 14.

The development of WMATA's advertising guidelines has been detailed in two recent decisions of the D.C. Circuit.  *American Freedom Defense Initiative v. WMATA*, 901 F.3d 356, 360 (D.C. Cir. 2018) ("*AFDI*"); *Archdiocese of Washington v. WMATA*, 897 F.3d 314, 319 (D.C. Cir. 2018), *cert. denied*, 140 S. Ct. 1198 (2020) ("*Archdiocese*").  As those decisions explain, from the 1970s through 2015, WMATA accepted most issue-oriented advertisements, including political, religious, and advocacy ads.  *AFDI*, 901 F.3d at 360; *Archdiocese*, 897 F.3d at 319. Beginning in 2010, due to regular complaints, WMATA began to reconsider accepting issue-oriented ads.  *Archdiocese*, 897 F.3d at 319.  Ads generating complaints included ads critical of the Catholic Church's position against use of condoms, ads by Plaintiff PETA with graphic images of animal cruelty, and ads opposing discrimination based on sexual orientation.  *Id*.

In 2015, prompted by an anti-Islam ad – " 'the straw that broke the camel's back' " – WMATA temporarily imposed a ban on issue-oriented advertisements.  *AFDI*, 901 F.3d at 360; Complaint ¶ 17.

In November 2015, WMATA's Board concluded that "any economic benefit derived from issue-oriented advertising was outweighed by four considerations: (1) complaints from its employees, community opposition and outcry, and adverse publicity for WMATA; (2) security concerns from the Metro Transit Police Department and the United States Department of Homeland Security; (3) vandalism of WMATA property; and (4) the administrative burden associated with the time-intensive process of reviewing proposed ads and responding to

complaints about ads." *Archdiocese*, 897 F.3d at 320.  WMATA therefore amended its

Guidelines, declaring its advertising forum a nonpublic forum, and prohibited certain categories

of advertising.  Complaint ¶ 18.

> Plaintiffs allege that these Guidelines are relevant:

> 4.   Medical and health-related messages will be accepted only from government health organizations, or if the substance of the message is currently accepted by the American Medical Association and/or the Food and Drug Administration.

> 9.   Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited.

> 13.  Advertisements that support or oppose an industry position or industry goal without direct commercial benefit to the advertiser are prohibited.

> 14.  Advertisements that are intended to influence public policy are prohibited.

Complaint ¶ 18.  The amended Guidelines applied equally to all parties seeking to run issue-

oriented advertising, *i.e.*, it was viewpoint neutral.  *Id.* ¶¶ 17-19, Exhs. C-E.

**B.     WMATA Rejects Plaintiffs' Ads.**

Each of the Plaintiffs submitted ads that WMATA rejected.

In March 2017, Plaintiff ACLU Foundation submitted a series of ads that contained the

text of the First Amendment in different languages.  Complaint ¶¶ 23-24 & Exh. A.  The ads

included the ACLU's logo over the slogan "We the People."  *Id.*  The ACLU was informed by

the contractor that places ads on WMATA properties – Outfront Media, Inc. ("Outfront") – that

the ads were rejected because WMATA "does not take any issue oriented advertising."  *Id.* ¶ 24.

Plaintiff Carafem operates clinics that regularly prescribe and dispense medical abortion

pills.  Complaint ¶ 32.  Although WMATA accepted one of its ads in October 2015, WMATA

rejected a different ad in December 2016.  *Id.* ¶¶ 34, 36-37.  The rejected ad has an image of a

large white pill.  At the top is Carafem's name and, below that, "10-Week-After-Pill."  Below the

image of the pill, the advertisement reads "For Abortion Up to 10 Weeks.  $450.  Fast.  Private.

Carafem.org." *Id.* ¶ 35 & Exh. H.  Carafem was advised by Outfront and WMATA that the ad violated Guidelines 4 and 9.  *Id.* ¶¶ 36-37.

Plaintiff Milo Worldwide sought to place posters throughout WMATA train stations and train cars to advertise Milo Yiannopoulos' book *Dangerous*.  Complaint ¶¶ 50, 52.  Mr. Yiannopoulos "is a public figure who is known for his dissident opinions about contemporary issues" and has a "distinct media personality and brand [which] is to engage provocatively with various matters of public concern."  *Id.* ¶ 49.  The Complaint alleges:

> The advertisements displayed only Mr. Yiannopoulos's face, the book's title, the text "Pre-Order Now," and, across the top, one of four short quotations from different book reviews.  The four quotations and their sources were: (a) "The most hated man on the Internet" – The Nation; (b) "The ultimate troll" – Fusion; (c) "The Kanye West of Journalism" – Red Alert Politics; and (d) "Internet Supervillain" – Out Magazine.

*Id.* ¶ 51 & Exh. L.  In previous pleadings, Plaintiffs described the book as "a piece of advocacy on contemporary political and social issues [that] lies near the core of the First Amendment," argued that "publication and sale of Dangerous is an effort to reach people with a message and to persuade them," and that "[e]very lost sale therefore represents a lost opportunity to communicate, and perhaps to persuade."  Memorandum in Support of Plaintiff Milo Worldwide LLC's Motion for a Preliminary Injunction (Dkt. 2-1) at 18.  Milo Worldwide sought to place the ads "to bracket the book's publication date, July 4, 2017."  Complaint ¶ 50.

Outfront initially accepted and placed the ads for *Dangerous*.  Complaint ¶ 54.  However, when WMATA began receiving complaints about the ads, it directed that they be removed as prohibited by Guidelines 9 and 14.  *Id.* ¶¶ 55-58.

In October 2016, PETA submitted an ad depicting a pig with accompanying text reading, "I'm ME, Not MEAT.  See the Individual.  Go Vegan."  Complaint ¶ 69 & Exh. P.  Although WMATA had run previous PETA ads in 2014, it rejected the ad based on Guideline 9.  *Id.* ¶¶ 68-

71.  WMATA rejected two other PETA ads in November 2016 based on Guidelines 9 and 14 and three others in February 2017, because they were issue-oriented and "not permissible by WMATA guidelines."  *Id.* ¶¶ 73-75.

### C.    Plaintiffs Sue WMATA and the Court Denies Plaintiff's Milo Worldwide's Request for Preliminary Injunction.

Plaintiffs allege six claims for relief.  They assert three claims that the Guidelines are facially unconstitutional, allegedly violating the First Amendment because: (1) Guidelines 4 and 13 discriminate based on viewpoint; (2) Guidelines 9, 13, and 14 vest WMATA with unfettered discretion that authorizes and encourages viewpoint discrimination; and (3) Guidelines 9, 13, and 14 are unconstitutionally vague.  Complaint ¶¶ 79-83.  Plaintiffs also allege two "as applied" challenges, claiming: (4) WMATA's rejection of ads from Plaintiff Carafem, Milo Worldwide, and PETA under Guidelines 4, 9, and 14 constituted unconstitutional viewpoint discrimination; and (5) WMATA rejected ads from Carafem, Milo Worldwide, and ACLU based on unreasonable considerations.  *Id.* ¶¶ 84-96.  Finally, in the Sixth Claim for Relief, Plaintiffs allege that, in rejecting Carafem's and Milo Worldwide's ads, WMATA failed to follow its own guidelines in violation of the *Accardi* doctrine.  *Id.* ¶¶ 98-99.  Plaintiffs seek declaratory and injunctive relief. *Id.* at 24-25 (Requested Relief).

When the case was filed, Plaintiff Milo Worldwide sought a preliminary injunction. Analyzing the evidence and arguments of the parties, this court held that Milo Worldwide failed to establish a likelihood of success in proving that WMATA's decision to reject its ad was unreasonable, that its decision constituted viewpoint discrimination, or that Guidelines 9 or 14

were unconstitutionally vague.[2]  *ACLU Found. v. Wash. Metropolitan Area Transit Auth.*, 303 F. Supp. 3d 11, 18-27 (D.D.C. 2018).

After ruling on the injunction, this court stayed the action pending the D.C. Circuit's decisions in *AFDI* and *Archdiocese*.  The stay was lifted after those cases were decided.

## ARGUMENT

## I.   STANDARDS FOR RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS.

Under Rule 12(c), after the defendant has answered a complaint, the defendant can ask the court "to render a judgment on the merits . . . by looking at the substance of the pleadings and any judicially noted facts."  *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018) (quotation omitted).  "Thus, a Rule 12(c) motion requires the court to consider and decide the merits of the case, on the assumption that the pleadings demonstrate that there are no meaningful disputes as to the facts such that the complaint's claims are ripe to be resolved at this very early stage in the litigation."  *Id*. (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1369 (3d ed. 2004)); *accord Price v. Barr*, No. CV 19-3672 (CKK), 2021 WL 230135, at *4 (D.D.C. Jan. 22, 2021).  The "movant must demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings" and that "no material fact is in dispute."  *Murphy*, 326 F.R.D. at 49.  As with Rule 12(b)(6), the court must decide whether the complaint " 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' "  *Rhodes v. Superior Court of D.C.*, No. CV 17-0698

---

[2] This court also denied a request for a preliminary injunction by putative plaintiff American Civil Liberties Union (ACLU) – a different entity than Plaintiff American Civil Liberties Union Foundation.  Dkt 38.  Following denial of the injunction, ACLU withdrew its request to join in this action.  Plaintiffs also withdrew their proposed amended complaint.

(JDB), 2018 WL 4828404, at *1 (D.D.C. Oct. 4, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)) (additional internal quotations omitted).

## II.      PLAINTIFF MILO WORLDWIDE'S CLAIMS ARE MOOT.

To satisfy Article III of the Constitution, a " 'suit must remain alive throughout the course

of litigation, to the moment of final appellate disposition.' " *People for the Ethical Treatment of*

*Animals, Inc. v. United States Fish & Wildlife Serv*., 59 F. Supp. 3d 91, 95 (D.D.C. 2014)

(quoting 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533

(3d ed. 2014)).  " 'If events outrun the controversy such that the court can grant no meaningful

relief; the case must be dismissed as moot.' "  *Id.* (quoting *McBryde v. Comm. to Review Circuit*

*Council Conduct and Disability Orders of the Judicial Conference of the U.S*., 264 F.3d 52, 55

(D.C. Cir. 2001)).

There can be no dispute that Milo Worldwide's claims are moot.  It sued over WMATA's

removal of advertisements that were supposed to run for four weeks, from June 26 to July 23,

2017, to promote Milo Yiannopoulos' soon-to-be-released book.  Complaint ¶¶ 50, 52.  The ads

contained the text: "Pre-Order Now[.]"  *Id.* ¶ 51.  The Complaint sought injunctive relief – no

damages – alleging:

> 66.    Publicity for a new book is most important around its publication date, when
> public interest is likely to be at its highest.  Every day these advertisements were
> down, Milo Worldwide suffered an irreparable loss in publicity for the book, and
> in sales.
>
> 67.    Milo Worldwide wants its advertisements to be re-posted.  Milo Worldwide
> continues to suffer irreparable injury during the time its advertisements are not
> permitted to run on WMATA advertising spaces.

Complaint ¶¶ 66-67.

Because the period in which Milo Worldwide sought to advertise its book has long

passed, there is no longer a controversy and this court cannot grant the sought-after relief.  *See,*

*e.g.*, *Paleteria La Michoacana, Inc v. Productos Lacteos Tocumbo S.A. De C.V*., 69 F. Supp. 3d 175, 213 n.13 (D.D.C. 2014) (court dismissing defendant's false advertising counterclaim as moot finding that the plaintiff no longer used the ad and "injunctive relief would have no effect as a remedy").  Accordingly, the claim is moot.

If Milo Worldwide argues that the court should apply the exception to the mootness doctrine for disputes capable of repetition, yet evading review, it cannot carry its burden of proving that the exception applies.[3]  This court applies a two-factor test, requiring a showing: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Independence Inst. v. FEC*, 216 F. Supp. 3d 176, 183 (D.D.C. 2016) (finding that the complaining party was likely to be subjected to the same action after having indicated plans to run the ad at issue four years later for another candidate referenced in the ad).  This exception "applies only in exceptional situations[.]" *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

Milo Worldwide cannot satisfy either factor.  To meet the first factor, the D.C. Circuit has held that " 'a litigant who could have but did not file for a stay to prevent a counter-party from taking any action that would moot his case may not, barring exceptional circumstances, later claim his case evaded review.' " *Newdow v. Roberts*, 603 F.3d 1002, 1008-09 (D.C. Cir. 2010) (quoting *Armstrong v. FAA*, 515 F.3d 1294, 1297 (D.C. Cir. 2008)).  To prevent the claim from

---

[3] The initial burden of proving mootness lies with the party claiming it, while the opposing party bears the burden of showing the exception applies.  *Planned Parenthood of Wis., Inc. v. Azar,* 942 F.3d 512, 517 (D.C. Cir. 2019).

evading review, the litigant also has "an obligation that includes filing for preliminary injunctions and appealing denials of preliminary injunctions." *Id.*

Here, Milo Worldwide did not appeal the denial of the preliminary injunction. It therefore failed to satisfy the first factor.

Milo Worldwide also cannot satisfy the second factor. It requires a reasonable expectation that the plaintiff will come before the court with the same issue. *Independence Inst. v. FEC*, 216 F. Supp. 3d 176, 183 (D.D.C. 2016) (finding a reasonable expectation that the complaining party would be subjected to the same action after it indicated a desire to run the *same* ad four years later). That issue must be the " 'precise controversy' between the parties." *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 517 (D.C. Cir. 2019) ("the capable-of-repetition exception permits adjudication of an otherwise-moot case on the theory that it is capable of repetition; the exception does not permit the adjudication of *one* otherwise-moot case in anticipation of a *different* live one").

The Complaint's allegations set out the need for advertising during the period surrounding the release of Milo Yiannopoulos' book, *Dangerous*. The Complaint emphasizes that the ads needed to run around the publication date – a 2017 date that has long passed. There is no allegation that Milo Worldwide will seek to run those ads in the future. Indeed, it has expressly indicated that it will not amend the complaint to request belief beyond the single ad. Dkt. 62 at 4 (Joint Status Report noting that Plaintiffs are "content to leave their amended complaint unfiled, and to proceed to the merits based on their original complaint").

Accordingly, the court should dismiss Milo Worldwide from this action.

## III.   SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS AGAINST WMATA.

Plaintiffs bring their First Amendment claims under 42 U.S.C. § 1983, which permits actions against "every person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State or Territory or the District of Columbia" deprives another person of their constitutional rights, privileges, or immunities.  However, "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  WMATA, as a creation of two states and the District of Columbia, likewise is not a "person" for purposes of Section 1983 and is immune from suit under the doctrine of sovereign immunity.

As an interstate compact agency, WMATA is "created by compact," *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 42 (1994), and an "instrumentality and agency of states," *Archdiocese*, 897 F.3d at 333.  Its powers derive from the sovereign authority of the signatory states as specified by the Compact, not from Congress.  *Hess*, 513 U.S. at 42 (" 'An interstate compact, by its very nature, shifts a part of a state's authority to another state or states, or to the agency the several states jointly create to run the compact.' ") (quoting M. Ridgeway, Interstate Compacts: A Question of Federalism 300 (1971)); *see also Old Town Trolley Tours of Wash., Inc. v. WMATA*, 129 F.3d 201, 204 (D.C. Cir. 1997) ("The [Washington Metropolitan Area Transit] Commission is an authority, not of the federal government, but of Virginia, Maryland, and the District of Columbia.")  In creating WMATA, the "three signatories conferred each of their respective sovereign immunities, including the Eleventh Amendment immunity of the two states, upon [WMATA]."  *Watters v. WMATA*, 295 F.3d 36, 39 (D.C. Cir. 2002) (collecting cases); *see, e.g.*, *Oviedo v. WMATA*, 948 F.3d 386, 393 (D.C. Cir. 2020), *cert. denied*, S. Ct. 347 (2020).

Plaintiffs allege that WMATA has waived sovereign immunity in Section 80 of the WMATA Compact.  Complaint ¶ 4.  But Section 80 provides only "a limited waiver of WMATA's sovereign immunity[.]"  *KiSKA Const. Corp. v. WMATA*, 321 F.3d 1151, 1158 (D.C.

Cir. 2003).  It "waives immunity for contract claims and claims of torts 'committed in the conduct of any proprietary function,' but not torts committed 'in the performance of a governmental function.' " *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1138 (D.C. Cir. 2015) (citation omitted), and nothing else.  This court has held that "unless [WMATA's] limited waiver of immunity applies," "[d]istrict courts lack subject matter jurisdiction to enter judgment against WMATA." *Id.*; *see also Watters*, 295 F.3d at 39-40.

Recognizing that it is often difficult to distinguish "proprietary" from "governmental" functions, the D.C. Circuit has held that the immunity "often turns on whether the activity is 'discretionary' or 'ministerial,' a dichotomy employed by the Federal Tort Claims Act." *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (quoting *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997)).  "Discretionary duties generally 'involve[] judgment, planning, or policy decisions' and are immunized as reflecting sovereign choices." *Banneker*, 798 F.3d at 1138 (quoting *KiSKA*, 321 F.3d at 1159 n.9).

To make this determination, the court must first ask if "any statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* (internal citations and quotations omitted).  If a prescribed course of action exists – eliminating the state or its official's ability to exercise discretion – the act may be non-discretionary and thus proprietary. *KiSKA*, 321 F.3d at 1159-60 (explaining that a regulation constrains discretion only if the actor "has no rightful option but to adhere to the directive") (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)) (internal quotations omitted).

If, however, a governing regulation leaves room for the exercise of discretion, the court asks if "the exercise of discretion is 'grounded in "social, economic, or political goals." ' " *Beebe*, 129 F.3d at 1287 (quoting *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995)); *accord*

*KiSKA*, 321 F.3d at 1159.  If it is, the decision is " 'susceptible to policy judgment,' [citation], the 'activity is governmental, thus falling within section 80's retention of sovereign immunity' [citation]." *KiSKA*, 321 F.3d at 1159 (citations and additional internal quotations omitted).

There can be no doubt that WMATA exercises discretion in deciding whether to accept or reject ads.  No statute or regulation strictly proscribes its authority to make decisions about advertisements.  WMATA's decision to accept advertising at all and, if so, to enact the Guidelines, plainly involved discretion.  (*Lehman v. City of Shaker Heights*, 418 U.S. 298, 303 (1974) (decisions to enact restrictions on advertising are discretionary: "a city transit system has discretion to develop and make reasonable choices concerning the type of advertising that may be displayed in its vehicles") (plur. op.); *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 95 (1st Cir. 2004) (in administering advertising policy, transit authority "is also entitled to some discretion in determining which advertisements are likely to alienate ridership and cost it revenue"); *see also Archdiocese*, 897 F.3d at 320 (identifying four policy grounds the WMATA Board considered in adopting the Guidelines that "outweighed" the "economic benefit derived from issue-oriented advertising").

That discretion continues when WMATA decides whether to accept or reject certain ads. Although the First Amendment prohibits laws or regulations that "vest[] *unbridled* discretion in the hands of a government official or agency[,]" when applying an advertising policy, "a certain amount of discretion must necessarily be exercised."  *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Regional Transp.*, 698 F.3d 885, 893-94 (6th Cir. 2012) (upholding transit authority's ban on "political" advertisements, while acknowledging "there may be some difficult determinations, on which reasonable people may disagree") (emphasis added), *abrogated on other grounds in American Freedom Defense Initiative v. Suburban Mobility Auth. for Regional*

*Transp.*, 978 F.3d 481 (6th Cir. 2020).  In fact, Plaintiffs allege that Guidelines 9, 13, and 14 give WMATA "unfettered discretion" to decide what the Guidelines permit and forbid.  Complaint ¶¶ 80-82.  But here WMATA exercised its reasonable discretion in applying the Guidelines and rejecting Plaintiffs' ads.

Nor can there be any dispute that WMATA's decisions are susceptible to policy judgment.  As the D.C. Circuit explained in *Archdiocese*, the adoption of the Guidelines came not only after numerous customer complaints, but out of concerns that certain ads might incite individuals to violence on the system and harm WMATA employees and customers.  897 F.3d at 319 (detailing safety concerns about a proposed anti-Islam ad depicting a cartoon version of the Prophet Mohammad, noting that two gunmen were killed attempting to attack the contest where the cartoon was created).  The Guidelines also were adopted following a survey that showed the majority of WMATA customers opposed issue-oriented ads.  *Id*.  Thus, WMATA adopted the Guidelines out of concerns for the public that uses its transit services – concerns it implements when it decides if specific ads fall within the categories proscribed by the Guidelines.

That conclusion is supported by *KiSKA*, which held that WMATA's decision to exclude certain design documents from a bid package was a " 'susceptible to policy judgment' " and "required consideration of budgetary constraints and economic expediency."  *KiSKA*, 321 F.3d at 1161.  The *KiSKA* plaintiff alleged that WMATA had fraudulently and negligently misrepresented the scope of the work by omitting an engineering report that identified significant obstacles a contractor would encounter in performing the contract.  The court found no statute, regulation, or policy that prescribed the content of the bid package and concluded that its formulation involved "consideration of budgetary constraints and economic expediency."  *Id.* at 1160-62.

Like decisions about the contents of the bid package, WMATA's decisions to accept or reject certain categories of ads are fraught with policy considerations. Concerns about security, employee and customer complaints, vandalism, and the cost of reviewing issue-oriented ads all factored into the decision to proscribe the specific types of ads prohibited by the Guidelines. Therefore, WMATA's issuance and application of the Guidelines involve the exercise of discretion subject to policy judgments that are protected by sovereign immunity.

Plaintiffs' Complaint does not assert tort or contract claims against WMATA; thus, Section 80 is inapplicable. Moreover, WMATA's consideration of ads under the Guidelines is discretionary and protected by its sovereign immunity. Accordingly, the court should find that sovereign immunity applies and has not been waived, and that the court lacks subject matter jurisdiction over WMATA, which should be dismissed from this action.

## IV.   THE SIXTH CLAIM FOR RELIEF SHOULD BE DISMISSED BECAUSE THE *ACCARDI* DOCTRINE DOES NOT APPLY TO WMATA.

The Sixth Claim for Relief alleges that, in rejecting Carafem's and Milo Worldwide's ads, WMATA failed to follow its own regulations in violation of the *Accardi* doctrine. Complaint ¶¶ 98-99. No such claim lies against WMATA. WMATA is not a federal agency, the APA does not apply to WMATA, and, therefore, the *Accardi* doctrine is not applicable here.

The *Accardi* doctrine provides that when federal agencies set rules governing their actions – "even gratuitous procedural rules that limit otherwise discretionary actions" – they must adhere to them. *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003); *see also Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) ("It is well settled that an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion.").

A failure to follow regulations is not a violation of the Constitution. *Accardi* "enunciate[s] principles of federal administrative law rather than of constitutional law binding upon the States." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8 (1978); *accord C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 212 (D.D.C. 2020) (quoting *Bd. of Curators*); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 103 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) ("*Accardi* is based on administrative law principles, not constitutional due process requirements.").

When an agency fails to follow its own regulations, the *Accardi* doctrine holds that the Administrative Procedure Act ("APA") provides a procedural mechanism for enforcing compliance. *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988) ("[T]he Agency's failure to follow its *own regulations* can be challenged under the APA . . . .") (original emphasis); *see also Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 642 (10th Cir. 1990) ("The failure of an agency to follow its own regulations is challengeable under the APA.").

The *Accardi* doctrine does not, however, apply to the acts of agencies and officials that are not subject to the APA, including state or local agencies. *See, e.g.*, *Osorio v. Gallo*, No. 3:19-CV-151 (VAB), 2020 WL 1531300, at *4, n.2 (D. Conn. Mar. 31, 2020) (rejecting plaintiff's assertion of the *Accardi* doctrine to argue against prosecutorial immunity because "claims do not involve federal agency action or administrative regulations" and, thus, "the Accardi Doctrine is irrelevant"); *Schneider v. Chandler*, No. 16CV6560 (DLC), 2018 WL 770395, at *6 (S.D.N.Y. Feb. 7, 2018) (*Accardi* doctrine did not apply to city agency's alleged disregard of city regulations). By the same reasoning, the *Accardi* doctrine does not apply to WMATA because WMATA is not a federal agency.

16

Moreover, because WMATA's alleged failure to follow its own regulations does not give rise to a claim under the APA or a claim for constitutional violations independent of Plaintiffs' first five claims for relief, Plaintiffs have no cause of action to enforce the Guidelines.  Although section 12 of the WMATA Compact authorizes WMATA to adopt any rules "respecting the exercise of the powers conferred by [the Compact,]" Compact § 12(c), D.C. Code § 9-1107.1, WMATA has not adopted any rules or regulations providing for judicial review of decisions to accept or reject advertisements.  The Guidelines themselves do not purport to authorize judicial review of a decision to reject an ad and Plaintiffs can point to no provision of the WMATA Compact that authorizes such a claim.  Thus, Plaintiffs have no cause of action to enforce WMATA's Guidelines.

Accordingly, Plaintiffs cannot rely on the *Accardi* doctrine to provide a claim against WMATA or pursue a non-Section 1983 claim predicated on WMATA's alleged failure to follow its own procedures.  Judgment should be granted on the Sixth Claim for Relief.

## V.      PLAINTIFFS LACK STANDING TO CHALLENGE GUIDELINE 13.

To satisfy Article III, a plaintiff must have standing to press its claim.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The "irreducible constitutional minimum of standing" requires that the plaintiff has suffered an injury in fact, that this injury was caused by the conduct complained of, and that the relief sought is likely to redress the injury suffered.  *Lujan*, 504 U.S. at 560-61.  That injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.' " *Id*. at 560 (additional quotation marks omitted); *accord Susan B. Anthony List*, 573 U.S. at 158. The party invoking federal jurisdiction bears the burden of establishing each of the three elements required for standing.  *Lujan*, 504 U.S. at 561.

Although plaintiffs may bring facial challenges to regulations they contend violate the First Amendment, they must establish they have suffered an injury-in-fact from each provision they challenge.  *E.g.*, *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007) (plaintiff's standing with regard to one element of an ordinance "does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions"); *Covenant Media of S.C., LLC v. City of North Charleston*, 493 F.3d 421, 429-430 (4th Cir. 2007) ("Although there is broad 'latitude given facial challenges in the First Amendment context, a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions.") (citations and quotation marks omitted); *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (rejecting argument that "injury under one provision [or ordinance] is sufficient to confer standing on a plaintiff to challenge all provisions of an allegedly unconstitutional ordinance"); *see also Spirit of Aloha Temple v. Cnty. of Maui*, 384 F. Supp. 3d 1231, 1245 (D. Haw. 2019) (plaintiffs bringing facial challenge to regulations governing special use permits lacked standing to challenge subsections of regulations that Planning Commission did not consider in denying permit), *motion to certify appeal denied*, No. CV 14-00535 SOM/WRP, 2019 WL 2146237 (D. Haw. May 16, 2019).

Plaintiffs have not sufficiently pled standing to challenge Guideline 13.  The only Plaintiff who even mentions Guideline 13 is PETA.  According to the Complaint, WMATA's contractor—after receiving an ad submission from PETA but before WMATA issued a decision on the ad—advised PETA that the ad likely would be rejected by WMATA and suggested that if PETA made certain changes WMATA might accept the ad.  Complaint ¶ 70.  WMATA subsequently rejected the ad based on Guideline 9.  *Id.* ¶ 71.  Plaintiffs, however, assert that the

ad's content also violated Guideline 13.  *Id.*  The Complaint alleges that WMATA rejected three additional PETA ads "as issue-oriented and 'not permissible by WMATA guidelines.'"  *Id.* ¶ 75.  "Issue-oriented" ads are prohibited by Guideline 9.  *Id.* ¶ 18 ("Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited") (quoting Guideline 9).  However, Plaintiffs assert that those ads violated Guideline 13 (as well as Guideline 4).  *Id.* ¶ 75.

Thus, the Complaint bases its assertions about Guideline 13 on Plaintiffs' own conclusions that PETA's ads violated the guideline.  It alleges no facts that would support a reasonable inference that WMATA actually applied Guideline 13 in rejecting any of the ads.  At most, the Complaint's factual allegations are "merely consistent" with application of Guideline 13, which is insufficient survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' ") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  Therefore, Plaintiffs lack standing to challenge Guideline 13.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this court grant Defendants' Motion for Judgment on the Pleadings, dismiss all claims by Milo Worldwide as moot, dismiss all claims against WMATA on the grounds of sovereign immunity, dismiss the Sixth Claim for Relief on the grounds that the *Accardi* doctrine does not apply to WMATA or Mr.

Wiedefeld, and dismiss any challenge to WMATA's Guideline 13 on the grounds that Plaintiffs lack standing.


Date:   March 1, 2021                Respectfully submitted,

                                     CALG LLP

                                     AKIN GUMP STRAUSS HAUER & FELD LLP


                                     By:   s/ *Rex S. Heinke*
                                           Rex S. Heinke
                                              (D.C. Bar No. Bar No. CA00080)
                                           Jessica M. Weisel (pro hac vice)
                                           CALG LLP
                                           811 Wilshire Blvd., 17th Floor
                                           Los Angeles, CA 90017
                                           Telephone: (213) 878-0404
                                           rex.heinke@calapplaw.com
                                           jessica.weisel@calapplaw.com

                                           Caroline L. Wolverton
                                              (D.C. Bar No. 496433)
                                           Akin Gump Strauss Hauer & Feld LLP
                                           2001 K Street, N.W.
                                           Washington, D.C. 20006
                                           Telephone: (202) 887-4000
                                           cwolverton@akingump.com


                                           Attorneys for Defendants