**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>FEMHEALTH USA, INC., d/b/a CARAFEM,<br><br>MILO WORLDWIDE LLC,<br><br>PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,<br><br>        Plaintiffs,<br>    v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,<br><br>PAUL J. WIEDEFELD,<br><br>        Defendants. | No. 1:17-cv-1598 (TSC) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION**
**FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Megan Yan (Not yet a member of the bar;
  practicing under supervision pursuant to
  D.C. App. R. 49(c)(8A))
American Civil Liberties Union Foundation
  of the District of Columbia
915 15th Street, NW, 2nd Floor
Washington, DC 20005

Brian Hauss
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Vishal Agraharkar
American Civil Liberties Union Foundation
  of Virginia
701 East Franklin Street, Suite 1412

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

THE PLEADINGS ........................................................................................................2

    The Complaint ................................................................................................... 2

    The Amended Answer ........................................................................................5

LEGAL STANDARD ................................................................................................5

ARGUMENT ..............................................................................................................7

    I. Milo Worldwide LLC's Claims are Not Moot ...........................................7

    II. Sovereign Immunity Does Not Bar Plaintiffs' Claims Against WMATA ...............9

    III. WMATA, Like Other Governmental Bodies, Must Follow Its Own Rules ..........13

    IV. Plaintiffs Have Standing to Challenge Guideline 13 ...........................................16

CONCLUSION ..........................................................................................................21

## TABLE OF AUTHORITIES

**Cases:**

*Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017) .................................................. 20

*Ballard v. Comm'r*, 544 U.S. 40 (2005) ........................................................................ 15

*Baumann v. District of Columbia*, 744 F. Supp. 2d 216 (D.D.C. 2010) ............................. 6

*Brockmann v. Department of Air Force*, 27 F.3d 544 (Fed. Cir. 1994) ......................... 13

*Carey v. Piphus*, 435 U.S. 247 (1978) .......................................................................... 10

*Carpenters Industrial Council v. Zinke*, 854 F.3d 1 (D.C. Cir. 2017) ............................. 21

*Chafin v. Chafin*, 568 U.S. 165 (2013) ............................................................................ 8

*Christoffel v. United States*, 338 U.S. 84 (1949) ..................................................... 14, 15

*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) .......................................... 20

*Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019) ............................................... 20

*Gay Activists Alliance v. WMATA,* 1979 BL 154*,* 5 Media L. Rep. 1404 (D.D.C.1979)..10

*Harris v. WMATA*, No. 20-cv-8 (CRC), 2020 WL 5798446 (D.D.C. Sept. 29, 2020) ..... 12

*Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) ...................................................................... 13

*Kline v. Republic of El Salvador*, 603 F. Supp. 1313 (D.D.C. 1985) ............................... 10

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ........................................... 11

*Lebron v. Nat'l R.R. Passenger Corp.*, 69 F.3d 650 (2d Cir.), *opinion amended on denial of reh'g*, 89 F.3d 39 (2d Cir. 1995) ................................................................ 11

*Lebron v. WMATA*, 665 F. Supp. 923 (D.D.C. 1987) ..................................................... 10

*Lederman v. United States*, 131 F. Supp. 2d 46 (D.D.C. 2001) ...................................... 10

*Lehman v. City of Shaker Heights,* 418 U.S. 298 (1974) ................................................ 10

*Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78 (D.D.C. 2018) .............. 6

*Massachusetts Fair Share v. Law Enforcement Assistance Admin.,* 758 F.2d 708 (D.C. Cir. 1985) .......................................................................................................... 15

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ............................................................................. 2

*Memphis Community School District v. Stachura*, 477 U.S. 299 (1986) ......................... 10

*Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876 (2018) ...................................... 13

*Murphy v. Dep't of Air Force*, 326 F.R.D. 47 (D.D.C. 2018) ....................... 5, 6, 11, 12, 21

*New Jersey v. EPA*, No. 08-1065, 2021 WL 833292 (D.C. Cir. Mar. 5, 2021) ............... 20

*Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981) .................................................. 10

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992) ............................ 6

*Price v. Barr*, No. 19-cv-3672 (CKK), 2021 WL 230135 (D.D.C. Jan. 22, 2021) ........... 6

*Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995) .................. 15

*Sanchez v. Office of the State Superintendent of Education*, 959 F.3d 1121
(D.C. Cir. 2020) ...................................................................................................... 8

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ................................................ 20

*Swift v. United States*, 649 F. Supp. 596 (D.D.C. 1986) .................................................. 13

*Tapp v. WMATA*, 306 F. Supp. 3d 383 (D.D.C. 2016) ..................................................... 6

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) .................... 13, 14, 15

*VanderMolen v. Stetson*, 571 F.2d 617 (D.C. Cir. 1977) ................................................. 15

*Whiteru v. WMATA*, 258 F. Supp. 3d 175 (D.D.C. 2017) ............................................... 12

*Wilkinson v. Legal Services Corp.*, 27 F. Supp. 2d 32 (D.D.C. 1998) ............................. 15

*Women's Health Link, Inc. v. Fort Wayne Public Transportation Corp.*, 826 F.3d 947
(7th Cir. 2016) ...................................................................................................... 15

*Yellin v. United States*, 374 U.S. 109 (1963) ............................................................ 14, 15

*Zukerman v. United States Postal Service*, 961 F.3d 431 (D.C. Cir. 2020) ..................... 13

**Other authorities:**

5 U.S.C. § 701(b)(1)(A) ............................................................................................ 14-15

5 U.S.C. § 701(b)(1)(B) ................................................................................................ 15

WMATA Compact, D.C. Code § § 9–1107.01(80) ........................................................ 9

Fed. R. Civ. P. 12(c) .............................................................................................. 5, 6, 11, 12

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION,

FEMHEALTH USA, INC., d/b/a CARAFEM,

MILO WORLDWIDE LLC,

PEOPLE FOR THE ETHICAL TREATMENT
  OF ANIMALS, INC.,

                Plaintiffs,

     v.

WASHINGTON METROPOLITAN AREA
  TRANSIT AUTHORITY,

PAUL J. WIEDEFELD,

              Defendants.

No. 1:17-cv-1598 (TSC)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Plaintiffs—three non-profit organizations and one for-profit corporation—brought this lawsuit to challenge the facial validity, and the application to them, of four of the Washington Metropolitan Transit Authority (WMATA)'s fourteen Guidelines Governing Commercial Advertising.

Defendants have now moved (ECF 64) for judgment on the pleadings with respect to four discrete issues: (1) the claims of Milo Worldwide LLC, which they assert are moot; (2) the claims against Defendant WMATA, which they assert are barred by sovereign immunity; (3) the claim that WMATA failed to follow its own regulations, which they assert does not lie against WMATA; and (4) the claims relating to Guideline 13, which they assert no Plaintiff has standing to bring. For the reasons given below, Defendants are not entitled to judgment on any of these claims.

# THE PLEADINGS

## The Complaint

The Complaint, ECF 1 (including the exhibits thereto, ECF 1-4), the well-pled allegations of which must be taken as true, challenges WMATA's advertising Guidelines 4, 9, 13, and 14, and their application to Plaintiffs. Those Guidelines provide:

> No. 4: "Medical and health-related messages will be accepted only from government health organizations, or if the substance of the message is currently accepted by the American Medical Association and/or the Food and Drug Administration."

> No. 9: "Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited."

> No. 13: "Advertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser are prohibited."

> No. 14: "Advertisements that are intended to influence public policy are prohibited."

Complaint ¶ 18.

The Complaint alleges that these Guidelines "seek[] to sanitize [WMATA's] advertising spaces from messages that might give offense. But '[g]iving offense is a viewpoint,' *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (plurality opinion), and the First and Fourteenth Amendments prohibit WMATA from discriminating based on viewpoint when selling advertising space." Complaint ¶ 1. Thus, by rejecting a variety of advertisements submitted by Plaintiffs, "ranging from an ad for an FDA-approved medication, to an ad urging a vegan diet, to an ad for a non-fiction book, to the text of the First Amendment itself," WMATA violated Plaintiffs' First and Fourteenth Amendment rights. *Id*. WMATA's advertising Guidelines, "which explicitly or implicitly incorporate such viewpoint discrimination," are likewise unconstitutional. *Id*.

The Complaint further alleges that WMATA has rejected advertisements submitted by Plaintiffs that do not violate its Guidelines, but that were rejected because of "the identity of the advertiser, the advertiser's known or presumed viewpoints, or the advertiser's line of business." Complaint ¶ 2. Those refusals were unreasonable, and also "violated the fundamental principle that the government must follow its own rules." *Id.*

In particular, the Complaint alleges that two of the Guidelines are explicitly viewpoint-discriminatory: "Guideline 4 allows the viewpoint of the U.S. Food and Drug Administration or the American Medical Association to be expressed, but not the viewpoints of others, including other well-qualified medical authorities." Complaint ¶ 19. Guideline 13 "allows an 'industry position or industry goal' to be expressed in advertisements sponsored by those who thereby seek a 'direct commercial benefit,'" but prohibits the expression of contrary viewpoints on those topics by speakers whose advertisements are not seeking a direct commercial benefit, "thereby excluding the viewpoints of all speakers who are not speaking for their own commercial advantage." *Id.* Guidelines 9 and 14 "vest WMATA with unbridled discretion to determine what is or is not 'an issue on which there are varying opinions,' and what is or is not 'intended to influence public policy.'" That unguided discretion "authorizes and encourages discriminatory enforcement against controversial or unpopular viewpoints, and has resulted in discriminatory enforcement against controversial or unpopular viewpoints," including those of Plaintiffs. Complaint ¶ 20.

Specifically, WMATA rejected advertisements submitted by Plaintiff ACLU which contained the text of the First Amendment in Arabic, English, or Spanish, apparently on the ground that they related to an "an issue on which there are varying opinions" or were "intended to influence public policy." Complaint ¶¶ 23, 24, 27, 29. But WMATA accepts advertisements

for gambling casinos, alcoholic beverages, and military aircraft, all of which relate to issues on which there are varying opinions or are intended to influence public policy. Complaint ¶ 28.

WMATA also rejected Plaintiff Carafem's advertisement for the "10-Week-After-Pill," a form of medication abortion, on the grounds that it was "issue-oriented" and made a "medical statement in violation of Guideline 4, which establishes that these types of statements/messages will only be accepted from government health organizations." Complaint ¶¶ 35, 37. Yet "[n]othing in the advertisement was 'intended to influence members of the public regarding an issue on which there are varying opinions'" (which is the actual language of Guideline 9), Complaint ¶ 43, and Guideline 4 does not provide that medical statements will be accepted only from government health organizations. *Id*. ¶ 38. Indeed, WMATA accepts a large variety of medical- or health-related messages that are not from government health organizations. *Id*. ¶ 41.

WMATA initially accepted a set of advertisements for the book, *Dangerous*, submitted by Plaintiff Milo Worldwide LLC. Complaint ¶ 54. Each of the advertisements displayed only the author's face, the book's title, the text "Pre-Order Now," and a short quotation from a book review. *Id*. ¶ 51. The advertisements were paid for and posted, *id*. ¶ 54, but were taken down after a few individuals complained. *Id*. ¶¶ 55-58. WMATA refused to explain its reversal of position except by stating that the advertisements "violate[d] guidelines #9 and #14." *Id*. ¶ 57. Yet the advertisements "contained no content intended to influence members of the public regarding an issue on which there are varying opinions," *id*. ¶ 60, and "contained no content intended to influence public policy," *id*. ¶ 61, and thus did not violate those Guidelines. They were rejected because of "the identity of the book's author and his viewpoints on various issues." *Id*. ¶ 64.

4

WMATA rejected several advertisements submitted by Plaintiff PETA, which were intended to present PETA's viewpoint about animals (for example, that people shouldn't eat them). WMATA rejected those advertisements as violating Guidelines 9 and 14. Complaint ¶¶ 69-75. But WMATA "has accepted and displayed many advertisements that are intended to influence riders to buy, do, and believe things that are at odds with PETA's viewpoint on humans' proper relationship with animals, such as eating animal-based foods." *Id*. ¶ 76.

### The Amended Answer

Defendants' Amended Answer, ECF 20, generally denies the allegations summarized above, or states that Defendants are without knowledge or information sufficient to form a belief as to the truth of those allegations. However, Defendants do admit that they determined the ACLU's advertisement "containing the text of the Establishment Clause of the First Amendment written in Arabic" violated WMATA's Guidelines, Amended Answer ¶ 24; that they "determined that a proposed ad from Carafem violated WMATA's Guidelines," *id*. ¶ 36; that they "stated that the advertisements [for the book *Dangerous*] violated Guidelines 9 and 14," *id*. ¶57, although they "ha[ve] accepted advertisements for books written by other authors," *id*. ¶ 64; and that PETA's advertisements were rejected because they violated WMATA's Guidelines, *id*. ¶¶ 71-75, although they "accept[] commercial advertisements promoting animal-related products and events," *id*. ¶ 76.

## LEGAL STANDARD

Defendants' motion for partial judgment on the pleadings (the "Motion") is filed pursuant to Fed. R. Civ. P. 12(c). To prevail on such a motion, the "movant must demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings." *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018). In assessing a Rule 12(c)

motion, "the Court must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.'" *Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 84 (D.D.C. 2018) (quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992)).

Although the light in which the complaint is viewed on a Rule 12(c) motion is the same as on a Rule 12(b)(6) motion, Rule 12(c) requires the Court to make "'a summary judgment type of determination,'" rather than the determination called for by a motion to dismiss. *Murphy,* 326 F.R.D. at 49 (quoting *Lopez*, 301 F. Supp. 3d at 84). Thus, "'[t]he Rule 12(c) burden is substantial: if the Rule 12(c) movant cannot show both that there is no material dispute of fact (as reflected in the parties' pleadings) *and* that the law is such that the movant is entitled to judgment as a matter of law, then the motion for judgment on the pleadings must be denied.'" *Price v. Barr*, No. 19-cv-3672 (CKK), 2021 WL 230135, at *4 (D.D.C. Jan. 22, 2021) (quoting *Murphy*, 326 F.R.D. at 49 (emphasis in original)).

And "'[b]ecause a Rule 12(c) motion would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, the Court must treat [such a] motion with the greatest of care and deny it if there are allegations in the complaint which, if proved, would provide a basis for recovery.'" *Tapp v. WMATA*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (quoting *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010)) (second alteration in original).

**ARGUMENT**

There are no undisputed facts in the pleadings that entitle Defendants to judgment as a matter of law.

### I.  Milo Worldwide LLC's Claims are Not Moot

Milo Worldwide's claims involve advertisements for a book, *Dangerous*, by Milo Yiannopoulos. Milo Worldwide executed a contract with Outfront Media, Inc. ("Outfront"), WMATA's advertising agent, for a four-week display of those advertisements in Metrorail stations and Metrorail cars, and paid $27,690 for that display. Complaint ¶¶ 52, 54. The advertisements are depicted in ECF 1-4 at 13 (Exhibit L). The advertisements were initially accepted and posted, but were taken down after about twelve days because some Metrorail riders complained. Complaint ¶¶ 54, 55, 58. WMATA (through Outfront) asked Milo Worldwide to accept a rescission of its contract and a refund of its payments, but Milo Worldwide refused, stating "we consider this to be a violation of our First Amendment rights." Complaint ¶ 59.

Defendants' entire argument that Milo Worldwide's claims are moot is contained in two sentences: "Because the period in which Milo Worldwide sought to advertise its book has long passed, there is no longer a controversy and this court cannot grant the sought-after relief. . . . Accordingly, the claim is moot." Motion at 8-9 (citation omitted). As their sole factual support for this argument, Defendants quote paragraphs 66 and 67 of the Complaint:

> 66. Publicity for a new book is most important around its publication date, when public interest is likely to be at its highest. Every day these advertisements were down, Milo Worldwide suffered an irreparable loss in publicity for the book, and in sales.

> 67. Milo Worldwide wants its advertisements to be re-posted. Milo Worldwide continues to suffer irreparable injury during the time its advertisements are not permitted to run on WMATA advertising spaces.

Motion at 8. But nothing in paragraphs 66 and 67 of the Complaint actually supports the conclusion that Defendants purport to draw from them. It is true that publicity for a new book is "most important" around its publication date, but nothing in the Complaint says, or suggests, that subsequent publicity is worthless. To the contrary, paragraph 67 specifically alleges that "Milo Worldwide wants its advertisements to be re-posted." Nothing in the Complaint says, or suggests, that Milo Worldwide's desire for its advertisements to be re-posted had any particular expiration date—it did not, and it does not.

The Court can take judicial notice that the book, *Dangerous*, remains in print and available for purchase on Amazon.com, *see* https://amzn.to/392C1un (last visited March 30, 2021), as well as through local bookstores, *see, e.g.,* https://www.politics-prose.com/book/9780692893449 (last visited March 30, 2021). As specifically alleged in paragraph 67 of the Complaint, Plaintiff Milo Worldwide wants its advertisements re-posted.[1]

A claim "'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Sanchez v. Office of the State Superintendent of Education*, 959 F.3d 1121, 1125 (D.C. Cir. 2020) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). In its Requested Relief, Plaintiff Milo Worldwide asked the Court to:

> B. DECLARE that Defendants' rejection of the advertisements submitted by Milo Worldwide in June 2017 was an unreasonable and improper application of WMATA's Guidelines Governing Commercial Advertising.

---

[1] As noted, the advertisements that were posted and removed in 2017 contained the text, "Pre-Order Now." Complaint ¶ 51. If the advertisements are re-posted at a future time, it would be preferable to remove the prefix "Pre-." But if necessary to make clear that the claim is not moot, the advertisements can be reposted without change. Notably, the book's publication date was July 4, 2017, and the advertisements were scheduled to be posted from June 16 through July 23, 2017. Complaint ¶¶ 50, 52. Thus, the "Pre-" prefix would have been technically outdated for 60% of the advertisement's original planned run.

C. DECLARE that Defendants' rejection of the advertisements submitted by each of the Plaintiffs violated the Plaintiff's rights under the First Amendment.

D. ORDER Defendants to accept the advertisements previously submitted by each Plaintiff, and to display them in WMATA advertising spaces in accordance with customary WMATA advertising practices, other than the Guidelines.

Complaint at 24-25. Each of those requests for relief remains active. The Court can grant "effectual relief" to Milo Worldwide by ordering the Defendants to re-post its advertisements, for which it has already paid. Its claims are therefore not moot.[2]

## II. Sovereign Immunity Does Not Bar Plaintiffs' Claims Against WMATA

Defendants seek final judgment dismissing all of Plaintiffs' claims against WMATA on the ground of sovereign immunity. Motion at 10-15. But they acknowledge that Section 80 of the WMATA Compact waives WMATA's sovereign immunity regarding its proprietary functions. Motion at 11-12. Specifically, the Compact provides that

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

D.C. Code §§ 9–1107.01(80).

In a throwaway line at the end of their argument on this point, Defendants state that "Plaintiffs' Complaint does not assert tort or contract claims against WMATA; thus, Section 80 is inapplicable." Motion at 15. But it has been recognized for decades that the kinds of claims Plaintiffs have asserted here are "constitutional torts." *See, e.g., Memphis Community School*

---

[2] There is no need to respond to Defendants' argument that Milo Worldwide's claim is not "capable of repetition yet evading review," *see* Motion at 9-10, because Plaintiffs do not rely on that exception to mootness. Plaintiffs' position, as explained above, is that Milo Worldwide's claim is not moot in the first place.

*District v. Stachura*, 477 U.S. 299, 305–06 (1986), referring to "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution" (quoting *Carey v. Piphus*, 435 U.S. 247, 253 (1978)), and citing *inter alia*, the First Amendment case of *Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981). *See also Lederman v. United States*, 131 F. Supp. 2d 46, 61 (D.D.C. 2001) (referring to "constitutional torts in the First Amendment context"); *Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1318 (D.D.C. 1985) (referring to "the commission of a constitutional tort based upon the First Amendment right to receive information."). Indeed, *Stachura* itself was a First Amendment case. This case therefore comes within the WMATA Compact's waiver of sovereign immunity for tort claims.

Defendants argue, more energetically, that WMATA's commercial advertising program is a governmental function, Motion at 12-15, but they fail to acknowledge that this Court has already squarely held that WMATA's commercial advertising operation is a proprietary function. *See Lebron v. WMATA*, 665 F. Supp. 923, 935 (D.D.C. 1987) ("The rental of commercial advertising space is clearly a proprietary function."). Indeed, in an earlier case, WMATA itself affirmatively argued that its commercial advertising operation was not a governmental, but "a private or proprietary act." *Gay Activists Alliance v. WMATA,* 1979 BL 154 at *4*, 5 Media L. Rep. (BNA) 1404, 1406–07 (D.D.C.1979).[3]

As the Supreme Court recognized in another case involving advertising on a city transit system, the rules about advertisements reflect "legislative objectives advanced by the city *in a proprietary capacity.*" *Lehman v. City of Shaker Heights,* 418 U.S. 298, 304 (1974) (emphasis added). The Second Circuit reached the same commonsense conclusion regarding Amtrak's

---

[3] *Gay Activists Alliance v. WMATA* is not available on Westlaw. A copy is attached for the convenience of the Court and counsel.

commercial advertising program, after the Supreme Court held, in *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995), that Amtrak was a governmental entity for First Amendment purposes. *Lebron v. Nat'l R.R. Passenger Corp.*, 69 F.3d 650, 657 (2d Cir.), *opinion amended on denial of reh'g*, 89 F.3d 39 (2d Cir. 1995) ("It is especially significant that, as in *Lehman,* Amtrak acts in this case in a proprietary capacity[.]"). Defendants cite no case supporting the proposition that a transit authority's commercial advertising program is, somehow, a governmental function.

In the teeth of this unanimous judicial view that a transit system's commercial advertising operations are a proprietary function, WMATA argues that because those operations involve some degree of discretion, they must be governmental. But Defendants' 12(c) motion by definition must rest on "undisputed facts that have been alleged in both parties' pleadings," *Murphy*, 326 F.R.D. at 49, and *there are no undisputed facts in the pleadings* that allow the Court to reach the conclusion WMATA urges. With the exception of a single sentence, WMATA's argument on this point consists of a wide variety of alleged facts and theories that find no support in either the Complaint or the Amended Answer. *See* Motion at 10-15. Matters outside the pleadings have no more relevance in a 12(c) motion for judgment on the pleadings than they do in a 12(b)(6) motion to dismiss.

The one sentence in Defendants' argument that rests on a pleading is the sentence in which Defendants note that "Plaintiffs allege that Guidelines 9, 13, and 14 give WMATA 'unfettered discretion' to decide what the Guidelines permit and forbid. Complaint ¶¶ 80-82." Motion at 14. *But Defendants have disputed those allegations*. *See* Amended Answer at 10-11:

80. Denied.

81. Denied.

82. Denied.

On this motion for judgment on the pleadings, Defendants cannot ignore their own pleading. So far as the pleadings are concerned, this issue is squarely disputed. And, as Defendants properly set forth in their motion, to prevail on a 12(c) motion, "The 'movant must demonstrate that the law entitles him to win given the *undisputed facts* that have been alleged in *both parties' pleadings'* and that 'no material fact is in dispute.'" Motion at 7 (quoting *Murphy*, 326 F.R.D. at 49 (emphasis added). Thus, for purposes of the pending motion, Defendants have pleaded themselves out of any ability to claim that their administration of the Guidelines is discretionary, because "if the Rule 12(c) movant cannot show . . . that there is no material dispute of fact (*as reflected in the parties' pleadings*) . . . then the motion for judgment on the pleadings must be denied." *Murphy,* 326 F.R.D. at 49 (emphasis added).

In any event, Defendants' argument that their advertising operation is immune from judicial review because it is discretionary must fail, because the Constitution provides non-discretionary standards that (taking Plaintiffs' allegations as true) WMATA has failed to meet. This Court has recognized that the background legal principles underlying a claim can provide such non-discretionary standards. For example, in *Harris v. WMATA*, No. 20-cv-8 (CRC), 2020 WL 5798446 (D.D.C. Sept. 29, 2020), the Court noted that under the common law of torts, "[o]ffering first aid to injured invitees is not a policy choice that WMATA may decide against, but a duty that all proprietors owe their invitees," and that "WMATA's common-law duty toward injured invitees … provided a non-discretionary minimum: WMATA *had to* provide emergency medical help [to the plaintiff's decedent] somehow." *Id*. at *14 (emphasis in original). *See also Whiteru v. WMATA*, 258 F. Supp. 3d 175, 192 n.11 (D.D.C. 2017) (same).  If

the common law can provide non-discretionary standards to which WMATA must adhere, then the Constitution likewise can provide such non-discretionary standards, because no government entity has discretion to violate the Constitution. *See Swift v. United States*, 649 F. Supp. 596, 601 n.4 (D.D.C. 1986); *Brockmann v. Department of Air Force*, 27 F.3d 544, 549 (Fed. Cir. 1994). Here, the Constitution provides several non-discretionary minimum standards that public entities must meet: they may not exclude speakers from limited public forums for viewpoint-discriminatory reasons (*see, e.g., Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (it is "a core postulate of free speech law: The government may not discriminate against speech based on the ideas or opinions it conveys.")); in operating limited public forums they may not rely on vague and overly broad standards (*see, e.g., Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1888-92 (2018); *Zukerman v. United States Postal Service*, 961 F.3d 431, 447-52 (D.C. Cir. 2020)); they must abide by their own regulations (*see* Part III, *infra*). WMATA is therefore not immune from judicial review of its alleged failure to meet these non-discretionary minimum standards.

### III. WMATA, Like Other Governmental Bodies, Must Follow Its Own Rules

Plaintiffs' Sixth Claim for Relief alleges that in rejecting Plaintiff Carafem's advertisement and Plaintiff Milo Worldwide's advertisements, WMATA failed to follow its own regulations, in violation of the *Accardi* doctrine. Complaint ¶¶ 98-99. WMATA seeks judgment on the pleadings on the ground that "No such claim lies against WMATA," Motion at 15, because "[t]he *Accardi* doctrine does not … apply to the acts of agencies and officials that are not subject to the APA." *Id*. at 16 (referring to the Administrative Procedure Act).

But in opposing Plaintiff Milo Worldwide's motion for a preliminary injunction, WMATA affirmatively recognized that it was subject to this fundamental principle: "an agency

that establishes guidelines for speech in a nonpublic forum must abide by them." Defendants'
Opposition to Plaintiff Milo Worldwide LLC's Motion for Preliminary Injunction (ECF 21) at
14. And this Court decided the preliminary injunction motion on that ground, *see* Memorandum
Opinion (ECF 27) at 8-13, concluding that WMATA did not "violate[] its own rules by rejecting
the advertisements." *Id*. at 13.[4]

WMATA has now apparently changed its mind. In support of its new position, WMATA
cites two unreported district court cases from other districts, and a footnote in a 43-year-old
Supreme Court case. Motion at 16.

But the Supreme Court has applied the principle that a government entity must obey its
own rules to non-APA entities both before and after that footnote. *Accardi* itself was not an
APA case but a habeas case. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 261
(1954) ("This is a habeas corpus action in which the petitioner attacks the validity of the denial
of his application for suspension of deportation"). In both *Yellin v. United States*, 374 U.S. 109
(1963), and *Christoffel v. United States*, 338 U.S. 84 (1949), the Court held that congressional
committees must follow their own rules when conducting investigations ("The question is n[ot]
what rules Congress may establish for its own governance …. The question is rather what
rules the House has established and whether they have been followed." *Christoffel,* 338 U.S. at
88-89). Congress, of course, is not an agency subject to suit under the APA, *see* 5 U.S.C. §

---

[4] The Court's preliminary finding that "WMATA reasonably concluded that Milo Worldwide's
advertisements violated WMATA's prohibition on advertisements intended to influence public
policy," *id*. at 11, is of course subject to reassessment on summary judgment or at trial. But even
if that finding was correct as to Milo Worldwide's advertisements, the Court's preliminary
injunction decision obviously does not address the question whether WMATA violated its own
Guidelines in rejecting Carafem's advertisement for the "10-Week-After-Pill," as the Complaint
alleges (¶ 98), since Carefem did not seek a preliminary injunction.

701(b)(1)(A). And in *Ballard v. Comm'r*, 544 U.S. 40 (2005), the Court's decision was based on the holding that "[t]he Tax Court, like all other decisionmaking tribunals, is obliged to follow its own Rules." *Id.* at 42. Federal courts are also not agencies subject to the APA. *See* 5 U.S.C. § 701(b)(1)(B). The Court cited the *Accardi* case in *Yellin*, but not in *Christoffel* or *Ballard;* it is the principle, not the label, that counts. Recognizing as much, this Court has concluded that "history, precedent, and application of the doctrine to all branches of government demonstrate that it is the fundamental concept of due process expressed in the Fifth and Fourteenth Amendments that gives life to the *Accardi* doctrine." *Wilkinson v. Legal Services Corp.,* 27 F. Supp. 2d 32, 57 (D.D.C. 1998). And the D.C. Circuit has stated that it is "a fundamental tenet of our legal system that the Government must follow its own regulations," *VanderMolen v. Stetson*, 571 F.2d 617, 624 (D.C. Cir. 1977), explaining that "[t]his precept is rooted in the concept of fair play and in abhorrence of unjust discrimination." *Massachusetts Fair Share v. Law Enforcement Assistance Admin.,* 758 F.2d 708, 711 (D.C. Cir. 1985).

In a case involving regulations of student speech at a state university (obviously not a federal agency subject to the Administrative Procedure Act), the Supreme Court admonished, "Once it has opened a limited forum, however, the State must respect the lawful boundaries it has itself set." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). And the Seventh Circuit applied same fundamental principle to a municipal transit system (also obviously not a federal agency subject to the Administrative Procedure Act) in *Women's Health Link, Inc. v. Fort Wayne Public Transportation Corp.*, 826 F.3d 947 (7th Cir. 2016). There, the transit agency prohibited advertisements that "express or advocate opinions or positions upon political, religious, or moral issues." *Id.* at 949. It rejected an advertisement that "did not express or advocate any such opinion or position." *Id*. The court (per Judge Posner) made short work of

the transit system's rejection. Observing that "[n]othing in Health Link's proposed ad violates any of the restrictions," *id*. at 952, and that "[o]nce a government entity has created a facility (the ad spaces in and on its buses, in this case) for communicative activity, it 'must respect the lawful boundaries it has itself set,'" *id*. at 953 (quoting *Rosenberger*, 515 U.S. at 829), the court of appeals directed the district court to enter an injunction against the transit agency. *Id*. As WMATA correctly recognized earlier in this litigation, if the principle that an agency must abide by its own regulations applies to the Fort Wayne Public Transportation Corporation, there is no reason why it would not apply to WMATA.

WMATA's desire to exempt itself from this bedrock rule of law should not be countenanced, and its motion for judgment on Plaintiffs' Sixth Claim for Relief should be denied.

### IV. Plaintiffs Have Standing to Challenge Guideline 13

Defendants have moved for judgment on Plaintiffs' claims involving Guideline 13, arguing that the Complaint "alleges no facts that would support a reasonable inference that WMATA actually applied Guideline 13 in rejecting any of the ads." Motion at 19. But the Complaint does allege facts that would support a reasonable inference—indeed, more than just an inference—that at least one Plaintiff's advertisements violate Guideline 13. Unless WMATA disclaims enforcement of Guideline 13, which it has not done, the Complaint provides a more than adequate factual basis for the inference that WMATA would reject those advertisements on that basis.

Guideline 13 provides: "Advertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser are prohibited." Complaint

¶ 18. Plaintiff PETA has alleged numerous facts showing that several of its advertisements would be rejected under that Guideline.

The first PETA advertisement discussed in the Complaint depicts a pig, with text reading, "I'm ME, Not MEAT. See the Individual. Go Vegan." Complaint ¶ 69. The Complaint alleges that "On November 1, 2016, Outfront [WMATA's agent] informed PETA that the advertisement would likely be rejected because it included the 'Go Vegan' message. Outfront also informed PETA that removing 'Go Vegan' and/or adding a 'commercial value' such as a donation solicitation or an offer to purchase PETA's gift products might lead to WMATA's acceptance of the advertisement." Complaint ¶ 70. Outfront's suggestion about adding a "commercial value" was obviously a reference to Guideline 13, which does not prohibit an advertisement that "oppose[s] an industry position or industry goal" as long as the advertisement has a "direct commercial benefit to the advertiser."

The Complaint notes that PETA's advertisement was rejected under Guideline 9, but goes on to allege that "[a]s Outfront's earlier message suggested, the advertisement also violated Guideline 13, as it opposed the food industry's position that people should eat meat, fish, poultry, dairy products, and other non-vegan foods, 'without any direct commercial benefit to' PETA." Complaint ¶ 71.

A second PETA advertisement depicted a cow and her calf, with accompanying text reading, "Not your mom? Not your milk! DeCalf Your Coffee! Choose almond or soy milk." The Complaint alleges that this advertisement "was intended to make viewers aware that consuming dairy products is unnatural and to encourage viewers to purchase and use substitutes." Complaint ¶ 73. This advertisement was also rejected. Complaint ¶ 74.

PETA submitted three additional advertisements to WMATA through its agent Outfront. They variously depicted a pig, a chicken, or a cow, and contained the text, "I'm ME, Not MEAT. See the Individual. Go Vegan." PETA's submission explained that additional text would be added, saying, "Going Vegan Reduces Risk of Suffering from Heart Disease and Cancer, and It Saves Lives." WMATA rejected those advertisements as issue-oriented and "not permissible by WMATA guidelines." The Complaint specifically alleges that these advertisements violated Guideline13. Complaint ¶ 75. That factual allegation is well supported and entirely plausible.

These allegations support the inferences—made nearly explicit by WMATA's agent with respect to PETA's first advertisement—that each of PETA's advertisements violated Guideline 13, and that if Guideline 9 were struck down by this Court (as Plaintiffs have requested), PETA's advertisements would be rejected under Guideline 13. In addition to the statement by WMATA's agent regarding the first advertisement, a simple comparison of PETA's advertisements and the language of Guideline 13 directly supports Plaintiffs' conclusion that PETA's proposed advertisements violate Guideline 13:

—PETA's "Go Vegan" advertisements convey the message that the viewer should not eat meat, fish, poultry, dairy products, and other non-vegan foods, which is in direct opposition to the position of the meat, fish, poultry, and dairy industries that those foods are good to eat, and in direct opposition to the goal of the meat, fish, poultry, and dairy industries to sell more meat, fish, poultry, and dairy products. PETA's advertisements therefore violate Guideline 13, which prohibits "[a]dvertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser." That is (obviously) why WMATA's agent, Outfront, suggested to PETA that "adding a 'commercial value' such as a donation solicitation or

an offer to purchase PETA's gift products," Complaint ¶ 70, might avoid the Guideline 13 problem.

—PETA's "DeCalf Your Coffee! Choose almond or soy milk" advertisement (Complaint ¶ 73) just as clearly opposes the position of the dairy industry that cow's milk is good to drink, and its goal of selling more milk.

—PETA's proposed advertisements containing the explicit message that "Going Vegan Reduces Risk of Suffering from Heart Disease and Cancer, and It Saves Lives" (Complaint ¶ 75) just as obviously opposes the position of these non-vegan food industries that their foods are healthy, and their goal of selling more of their products.

Indeed, Plaintiffs have already alleged, and incorporated exhibits in their Complaint demonstrating, that "WMATA has accepted and displayed many advertisements that are intended to influence riders to buy, do, and believe things that are at odds with PETA's viewpoint on humans' proper relationship with animals, such as eating animal-based foods, wearing clothing made from animals, and attending circus performances at which animals are made to perform in unnatural ways. Those viewpoints are accepted, but PETA's opposing viewpoints on these issues are censored." Complaint ¶ 76 (citing Exhibits T and U to the Complaint).

Notably, WMATA did not, in its Amended Answer, deny the allegation that PETA's advertisements violated Guideline 13. *See* Amended Answer (ECF 20) at ¶¶ 71, 75. Indeed, if WMATA were now arguing that PETA's advertisements *did not* violate Guideline 13, that would prove Plaintiffs' point that Guideline 13 violates the First Amendment because it "vests WMATA with unfettered discretion to determine what is or is not an 'industry position or industry goal,'" thereby "authoriz[ing] and encourage[ing] subjective, discriminatory

19

enforcement against unpopular or non-mainstream viewpoints," Complaint ¶ 81. It would also prove Plaintiffs' point that the Guideline is "void for vagueness because the line between permitted and prohibited speech is not clearly defined." Complaint ¶ 83. Presumably, then, WMATA does not deny that PETA's advertisements violate Guideline 13.

PETA has further alleged ongoing injury that this Court can easily remedy: "PETA still wishes to place the same advertisements, and similar advertisements, in WMATA advertising spaces. PETA is suffering irreparable injury during the time its advertisements are not permitted to run on WMATA advertising spaces." Complaint ¶ 77.

Contrary to WMATA's argument that Plaintiffs must demonstrate past injury in order to have standing to seek injunctive relief, *see* Motion at 17-18, it is black letter law that when seeking injunctive relief, a plaintiff need not show that it has already been injured by the defendant; "[a]n allegation of future injury may suffice if … there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty International USA*, 568 U.S. 398, 414 n.5 (2013)); *accord Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) ("future injuries … 'may suffice if … there is a substantial risk that the harm will occur.'") (quoting *Susan B. Anthony List*, 573 U.S. at 158).

As the D.C. Circuit noted just this month, it "has 'frequently upheld claims of standing based on allegations of a "substantial risk" of future injury.'" *New Jersey v. EPA*, No. 08-1065, 2021 WL 833292, at *5 (D.C. Cir. Mar. 5, 2021) (quoting *Attias v. Carefirst, Inc*., 865 F.3d 620, 627 (D.C. Cir. 2017)). Plaintiffs need not wait until after other Guidelines have been struck down and then file a separate lawsuit when an advertisement is rejected under Guideline

13; they are entitled to seek relief in this lawsuit against each of the Guidelines that poses a "substantial risk" of injury to their First Amendment rights.

Thus, Defendants' argument that Plaintiffs cannot have standing to seek injunctive relief regarding Guideline 13 unless they can show that a past advertisement was explicitly rejected based on Guideline 13 is wrong as a matter of law. And Plaintiffs have amply alleged (particularly when the pleadings are taken in the light most favorable to Plaintiffs, as they must be) that PETA's advertisements violated Guideline 13 and that there is a substantial risk that they would be rejected on that ground if PETA's advertisements are found not to violate other Guidelines or if other challenged Guidelines are struck down. There are certainly no "*undisputed facts* that have been alleged in both parties' pleadings," *Murphy*, 326 F.R.D. at 49 (emphasis added), from which the Court could conclude that PETA's advertisements do *not* violate Guideline 13, or that WMATA would not enforce that Guideline. If there is any doubt about whether PETA's (and perhaps other Plaintiffs') advertisements would violate Guideline 13, or about whether WMATA would enforce that Guideline, the proper course is to resolve that doubt in the usual course, after discovery.[5]

## CONCLUSION

For the reasons given above, Defendants are not entitled to judgment as a matter of law, and their motion for judgment on the pleadings should accordingly be denied. The parties should be directed to submit a revised Meet and Confer Report, with a proposed schedule, within a reasonable time after the Court issues its ruling on this motion.

---

[5] Once the Court concludes that at least one Plaintiff has standing to pursue this claim, it is of course unnecessary to decide, at this stage, whether any other Plaintiffs do. *See, e.g., Carpenters Industrial Council v. Zinke*, 854 F.3d 1, 9 (D.C. Cir. 2017).

March 31, 2021                               Respectfully submitted,

                                            *Arthur B. Spitzer*
                                            Arthur B. Spitzer (D.C. Bar No. 235960)
                                            Scott Michelman (D.C. Bar No. 1006945)
                                            Megan Yan[*]
                                            American Civil Liberties Union Foundation
                                               of the District of Columbia
                                            915 15th Street, NW, 2nd Floor
                                            Washington, DC 20005
                                            Telephone: (202) 601-4266
                                            aspitzer@acludc.org
                                            smichelman@acludc.org
                                            myan@acludc.org

                                            Brian Hauss
                                            American Civil Liberties Union Foundation
                                            125 Broad Street, 18th Floor
                                            New York, NY 10004
                                            Telephone: (212) 549-2500
                                            bhauss@aclu.org

                                            Vishal Agraharkar
                                            American Civil Liberties Union Foundation
                                               of Virginia
                                            701 East Franklin Street, Suite 1412
                                            Richmond, VA 23219
                                            Telephone: (804) 644-8022
                                            vagraharkar@acluva.org

                                            *Attorneys for Plaintiffs*

---

[*] Not yet a member of the bar; practicing under supervision pursuant to D.C. App. R. 49(c)(8A).