**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, | § § § | |
| FEMHEALTH USC, INC., d/b/a CARAFEM, | § § § | |
| MILO WORLDWIDE LLC, | § § | |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:17-cv-01598-TSC |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al., | § § § § | |
| Defendants. | § | |

---

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT...........................................................................................1

ARGUMENT ..................................................................................................................3

      I.       PLAINTIFF MILO WORLDWIDE'S CLAIMS ARE MOOT. .............................3

      II.     SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS AGAINST
             WMATA............................................................................................................4

      III.    THE SIXTH CLAIM FOR RELIEF SHOULD BE DISMISSED
             BECAUSE THE *ACCARDI* DOCTRINE DOES NOT APPLY TO
             WMATA..........................................................................................................10

      IV.    PLAINTIFFS LACK STANDING TO CHALLENGE GUIDELINE 13.............13

CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

**CASES**

*Abdulwali v. WMATA,*
   315 F.3d 302 (2003) ............................................................................................. 5

*Archdiocese of Washington v. WMATA,*
   897 F.3d 314 (D.C. Cir. 2018) ........................................................................... 5

*Ballard v. Comm'r,*
   544 U.S. 40 (2005) ............................................................................................ 12

*Bd. of Curators of Univ. of Mo. v. Horowitz,*
   435 U.S. 78 (1978) ............................................................................................ 13

*Beebe v. WMATA,*
   129 F.3d 1283 (D.C. Cir. 1997) ......................................................................... 5

*Christoffel v. United States,*
   338 U.S. 84 (1949) ............................................................................................ 11

*Cohen v. Bd. of Trustees of Univ. of D.C.,*
   311 F. Supp. 3d 242 (D.D.C. 2018) ............................................................ 4, 11

*Dep't of Commerce v. New York,*
   139 S. Ct. 2551 (2019) ..................................................................................... 16

*Food & Water Watch, Inc. v. Vilsack,*
   808 F.3d 905 (D.C. Cir. 2015) ......................................................................... 16

*FW/PBS, Inc. v. City of Dallas,*
   493 U.S. 215 (1990) ......................................................................................... 14

*Gay Activists Alliance v. WMATA,*
   1979 BL 154, 5 Media L. Rep. 1404 (D.D.C. 1979) ........................................ 7

*Harris v. WMATA,*
   490 F. Supp. 3d 295 (D.D.C. 2020) ................................................................ 10

*Jones v. Castro*
   168 F. Supp. 3d 169 (D.D.C. 2016) ............................................................. 4, 11

*Kingman Park Civic Ass'n v. Gray*
   27 F. Supp. 3d 142 (D.D.C. 2014) ..................................................................... 4

*KiSKA Const. Corp. v. WMATA,*
   321 F.3d 1151 (D.C. Cir. 2003) ......................................................................... 5

*Lebron v. Nat'l R.R. Passenger Corp.*,
    69 F.3d 650 (2d Cir.) ................................................................................ 6, 7

*Lebron v. WMATA*,
    665 F. Supp. 923 (D.D.C. 1987) ............................................................... 7

*Lehman v. City of Shaker Heights*,
    418 U.S. 298 (1974) ................................................................................. 6, 7

*Massachusetts Fair Share v. Law Enforcement Assistance Admin.*,
    758 F.2d 708 (D.C. Cir. 1985) .................................................................. 12

*McMillan v. WMATA*,
    898 F. Supp. 2d 64 (D.D.C. 2012) ........................................................... 9

*McNutt v. Gen. Motors Acceptance Corp.*,
    298 U.S. 178 (1936) ................................................................................. 14

*Morris v. WMATA*,
    583 F. Supp. 1522 (D.D.C. 1984) ............................................................ 9

*New Jersey v. Env't Prot. Agency*,
    989 F.3d 1038 (D.C. Cir. 2021) ............................................................... 16

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
    515 U.S. 819 (1995) ................................................................................. 11

*Sanders v. WMATA*,
    819 F.2d 1151 (D.C. Cir. 1987) ............................................................... 9

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ................................................................................. 16

*Tapp v. WMATA*,
    306 F. Supp. 3d 383 (D.D.C. 2016) ......................................................... 8

*Thomas Brooks Chartered v. Burnett*,
    920 F.2d 634 (10th Cir. 1990) ................................................................. 13

*United States ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) ......................................................................... *passim*

*VanderMolen v. Stetson*,
    571 F.2d 617 (D.C. Cir. 1977) ................................................................. 12

*Vanover v. Hantman*,
    77 F. Supp. 2d 91 (D.D.C. 1999) ............................................................ 13

*Webster v. Doe*,
    486 U.S. 592 (1988) ........................................................................................................ 13

*Whiteru v. WMATA*,
    258 F. Supp. 3d 175 (D.D.C. 2017) ................................................................................ 10

*Wilkinson v. Legal Services Corp.*,
    27 F. Supp. 2d 32 (D.D.C. 1998) .................................................................................... 12

*Women's Health Link, Inc. v. Fort Wayne Public Transportation Corp.*,
    826 F.3d 947 (7th Cir. 2016) .................................................................................... 11, 12

*Yellin v. United States*,
    374 U.S. 109 (1963) ........................................................................................................ 11

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller,
    *Federal Practice & Procedure* § 1369 (3d ed. 2004) ...................................................... 8

**PRELIMINARY STATEMENT**

A motion for judgment on the pleadings is not an invitation to a plaintiff to rewrite its complaint.  Yet that is what Plaintiffs seek to do in their Opposition ("Opp.") to WMATA's motion.  Plaintiffs also largely ignore the authorities cited by WMATA in its Memorandum in Support of Defendants' Motion for Judgment on the Pleadings ("Motion" or "Mot.") that demonstrate Plaintiffs' claims cannot proceed, choosing instead to cite numerous inapposite cases and make arguments that are legally baseless.  Nothing in the Opposition counters WMATA's four grounds for judgment on the pleadings.  The Motion, thus, should be granted.

First, without disputing the relevant legal standard for mootness, Plaintiffs argue that Milo Worldwide LLC still seeks to run the ads for its now-four-year-old book *Dangerous*.  For this, it relies on a single sentence in the Complaint, ignoring its numerous assertions – in the Complaint and in its unsuccessful Motion for Preliminary Injunction – that the ads were timed to correspond with the book's release in 2017.  Plaintiffs cannot rewrite their Complaint to evade mootness.  The Court should grant judgment to Defendants on Milo Worldwide's claims.

Second, Plaintiffs neither dispute nor reasonably address the standard in this Circuit for sovereign immunity.  As a host of cases have held, WMATA's conduct is immune from suit if its conduct is governmental, not proprietary.  That turns on the question of whether its actions are discretionary and influenced by policy concerns such as political, social, and economic considerations.

In a dodge-and-weave, Plaintiffs respond by relying on cases that refer to advertising conduct as "proprietary," but not in the manner that the D.C. Circuit uses the term.  Plaintiffs also misconstrue Defendants' Answer, arguing that its denial of an allegation that it has "unfettered discretion" in accepting or rejecting ads creates a material dispute of fact that precludes judgment

on the pleadings.  It does not.  All that matters for sovereign immunity is that Plaintiffs admit that

WMATA's advertising decisions involve the exercise of discretion – whether that discretion is

unfettered or not.  That admission is fatal to any argument that WMATA's conduct is proprietary.

And Plaintiffs' argument that the Constitution imposes limits on WMATA's discretion, thereby

eliminating any sovereign immunity defense, is unsupported by the cases on which Plaintiffs

rely.  That argument cannot be sustained because it is contrary to longstanding authority of this

Circuit and would foreclose any sovereign immunity defense for WMATA and other

governments where the Constitution imposes any limits on their discretion.

Third, Plaintiffs try to salvage their Sixth Claim for Relief by ignoring that it specifically

alleges that WMATA's conduct gives rise to a claim under *United States ex rel. Accardi v.

Shaughnessy*, 347 U.S. 260 (1954) ("*Accardi*"), which requires that federal agencies follow their

own rules.  Plaintiffs now assert that their claim is more general, permitting them to file an action

arising out of any failure by any government agency to follow its own policies as a separate

claim for relief.  Plaintiffs are wrong.  The *Accardi* doctrine is grounded in federal administrative

law that has no application to WMATA, an instrumentality of two states and the District of

Columbia.  Although Plaintiffs may be able to argue that the failure to follow policy may be

considered in deciding a First Amendment claim, the alleged failure in this case does not give

rise to a separate claim for relief.  Judgment therefore should be entered for Defendants on the

Sixth Claim for Relief.

Fourth, Plaintiffs cannot show they have standing to challenge Guideline 13, because the

Complaint contains no allegations that any ad was rejected under that Guideline.  Plaintiffs'

argument is nothing more than speculation that WMATA relied on Guideline 13 in rejecting the

ads PETA identifies in its Complaint.  That is not sufficient for standing.

2

Accordingly, this Court should grant judgment on the pleadings on the foregoing issues in favor of Defendants.

## ARGUMENT

## I.   PLAINTIFF MILO WORLDWIDE'S CLAIMS ARE MOOT.

Plaintiffs do not dispute that Milo Worldwide's claims are moot if an order directing Defendants to post the ads for the book *Dangerous* will not provide meaningful relief.  Instead, they argue that, per a single sentence in the Complaint, Milo Worldwide still wants the ads run nearly four years after this action was filed and Milo Worldwide unsuccessfully sought a TRO and preliminary injunction.

That sentence in paragraph 67 of the Complaint – "Milo Worldwide wants its advertisements to be re-posted" – immediately follows this language:

> Publicity for a new book is most important around its publication date, when public interest is likely to be at its highest.  Every day these advertisements were down, Milo Worldwide suffered an irreparable loss in publicity for the book, and in sales.

Complaint ¶ 66.  Earlier in its factual allegations related to Milo Worldwide, the Complaint states that the ads for *Dangerous* were "timed to bracket the book's publication date, July 4, 2017." *Id.* ¶ 50.  Plaintiffs also concede that the ads contained the text "Pre-Order Now[.]" *Id.* ¶ 51; Opp. at 8, n.1.

Like the Complaint, Milo Worldwide's preliminary injunction pleadings also emphasized the importance of the timing of the ads for *Dangerous*.  Milo Worldwide stated in its motion for preliminary injunction that it sought to publish the ads "[i]n conjunction with [*Dangerous'*] publication[,]" invited people to pre-order the book, and emphasized that "[a]dvertising contributes to the sales of *new books*[.]"  ECF 2-1, at 4, 6 (emphasis added).

Context matters.  Here, the context establishes that Milo Worldwide's claims required running the advertisements timed to coincide with the book's release in 2017.  Plaintiffs asserted that Milo Worldwide required preliminary injunctive relief because the rejection of his ads would cause irreparable harm by frustrating the sales of his new book.  Having sought immediate injunctive relief that emphasized the importance of the timing of the advertisements, the only plausible interpretation of the Complaint is that the relief being sought was time sensitive.  Why else did only Milo Worldwide seek preliminary injunctive relief, but no other Plaintiff did?  Four years later, the relief sought in the Complaint cannot be granted.  Milo Worldwide's claims are thus moot.

To the extent Plaintiffs now argue that any reposting of the *Dangerous* ads would constitute meaningful relief, they cannot rewrite their Complaint.  That is not the purpose of an opposition to a motion for judgment on the pleadings.  *Jones v. Castro*, 168 F. Supp. 3d 169, 181 (D.D.C. 2016) ("Plaintiff may not amend his Complaint through his Opposition to the Motion for Judgment on the Pleadings, and the Court need not consider any claims presented for the first time in his opposition.") (citing *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 168 (D.D.C. 2014); *accord Cohen v. Bd. of Trustees of Univ. of D.C.*, 311 F. Supp. 3d 242, 260 (D.D.C. 2018) (following *Jones v. Castro*).

Because the only plausible reading of Plaintiffs' Complaint is that Milo Worldwide's claims are moot, judgment should be granted in favor of Defendants on those claims.

## II.    SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS AGAINST WMATA.

Defendants' Motion established the test this Court must apply to analyze WMATA's sovereign immunity.  Section 80 of the WMATA Compact "waives immunity for contract claims and claims of torts 'committed in the conduct of any proprietary function,' but not torts committed 'in the performance of a governmental function.' "  *Banneker Ventures, LLC v.*

*Graham*, 798 F.3d 1119, 1138 (D.C. Cir. 2015) (citation omitted).  To determine if a challenged act is in the performance of a governmental function, this Circuit first asks if the act is "quintessentially governmental," such as law enforcement, and, if not, then asks if the action is "discretionary" as opposed to "ministerial."  *Abdulwali v. WMATA*, 315 F.3d 302, 304 (2003); *see also Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (WMATA's immunity "often turns on whether the activity is 'discretionary' or 'ministerial[]' ").  "Discretionary activities are 'governmental,' and thus are protected by sovereign immunity."  *Id*.  "Discretionary duties generally 'involve[] judgment, planning, or policy decisions' and are immunized as reflecting sovereign choices."  *Banneker*, 798 F.3d at 1138 (quoting *KiSKA Const. Corp. v. WMATA*, 321 F.3d 1151, 1159 n.9 (D.C. Cir. 2003); *Abdulwali*, 315 F.3d at 304 (WMATA's decisions are discretionary if influenced by political, social, or economic choices).

Here, WMATA's adoption of the Guidelines and application of the Guidelines to Plaintiffs' advertisements plainly falls on the discretionary side of the discretionary/ministerial dichotomy.  (Mot. at 12-15.)  Unlike ministerial actions, WMATA's decisions about advertising are not controlled by statute or regulation; WMATA exercised its discretion and considered matters such as security, employee and customer complaints, vandalism, and the cost of reviewing issue-oriented ads in deciding to adopt the Guidelines and prohibit ads like Plaintiffs'.  Mot. at 3-4; *Archdiocese of Washington v. WMATA*, 897 F.3d 314, 319-20 (D.C. Cir. 2018), *cert. denied*, 140 S. Ct. 1198 (2020) ("*Archdiocese*").

Plaintiffs do not actually address this Circuit's standard for determining when sovereign immunity bars claims against WMATA.  They instead misconstrue the meaning of the term "proprietary," relying on cases that use the term to describe when a transit agency engages in commercial activity.  That, however, is not the meaning applicable here.  A "proprietary" act is

one that is: (1) not quintessentially governmental; and (2) is ministerial, not discretionary. *Banneker*, 798 F.3d at 1138-39.  Under that proper standard, WMATA's advertising activity is governmental.

First, Plaintiffs point to the Supreme Court's decision in *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974), and the Second Circuit's decision in *Lebron v. Nat'l R.R. Passenger Corp.*, 69 F.3d 650 (2d Cir.) ("*Lebron I*"), *amended on denial of reh'g*, 89 F.3d 39 (2d Cir. 1995), which use the term "proprietary" to describe a transportation authority's conduct of advertising.  Neither case involved sovereign immunity, let alone addresses the proprietary/governmental distinction this Circuit applies.

In fact, *Lehman* upheld a restriction on "political" advertising, citing the city's justification for the restriction: "to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience."  *Lehman*, 417 U.S. at 304.  These reasons, the Court held, were "reasonable *legislative objectives* advanced by the city in a proprietary capacity" and, thus, not forbidden by the First or Fourteenth Amendments.  *Id.* (emphasis added). Under this Circuit's test, exercising such decision-making authority to satisfy legislative objectives is a governmental act involving discretion, not a proprietary, ministerial act, and thus protected by sovereign immunity.  *Banneker*, 798 F.3d at 1138-39.

The Second Circuit's decision in *Lebron I* used "proprietor" in a similar manner:

> Amtrak's decision, as a proprietor, to decline to enter the political arena, even indirectly, by displaying political advertisements is certainly reasonable. Amtrak's position as a government controlled and financed public facility, used daily by thousands of people, made it highly advisable to avoid the criticism and the embarrassments of allowing any display seeming to favor any political view.

*Lebron I*, 69 F.3d at 658.  Again, although the case uses a variation on the term "proprietary," it does not have the same meaning as "proprietary" under this Circuit's analysis.  To the contrary, the decision to "decline to enter the political arena . . . to avoid . . . criticism and . . .

6

embarrassments[,]" *id.*,  would be a "governmental act" under this test set forth in *Banneker*, 798 F.3d at 1138-39, because it is a discretionary decision influenced by policy considerations. Accordingly, neither *Lehman* nor *Lebron I* help Plaintiffs.

Second, Plaintiffs point to two decades-old decisions of this district that described WMATA's advertising function as "proprietary": *Lebron v. WMATA*, 665 F. Supp. 923 (D.D.C. 1987) ("*Lebron II*"), and *Gay Activists Alliance v. WMATA*, 1979 BL 154, 5 Media L. Rep. (BNA) 1404 (D.D.C. 1979).  Both cases predate WMATA's 2015 decision to close its advertising space to all ads (Mot. 3-4), so they are distinguishable for that reason alone.

The cases also are inapposite because neither case considered the D.C. Circuit's test for sovereign immunity.  *Lebron II* makes the same mistake Plaintiffs make – deeming advertising "proprietary" because it involves commercial activity.  In a single paragraph, citing *Lehman*, it holds that a political ad is "proprietary" and, thus, within the scope of Section 80's waiver. *Lebron II*, 665 F. Supp. at 935.  That cursory analysis cannot be squared with the D.C. Circuit's later jurisprudence outlining the two-part test for sovereign immunity.  *E.g.*, *Banneker*, 798 F.3d at 1138-39.

*Gay Activists Alliance* addressed a different sovereign immunity question than what is at issue here – whether Section 80 waives WMATA's immunity for claims under the District of Columbia Human Rights Act.  1979 BL 154 at *4, 5 Media L. Rep. (BNA) at 1406-07 (D.D.C.1979).  The court held it does not, because the objectives of a party to an interstate compact, "such as the establishment of a metropolitan regional transit authority here, could be readily undermined if the entity established by the compact were subjected to the potentially conflicting laws of the contracting parties."  *Id.* at *4.  Whether WMATA's acts were "proprietary" was not at issue in the case.

Third, Plaintiffs argue that the Court cannot find WMATA's conduct discretionary for purposes of sovereign immunity because WMATA denied the Complaint's allegations that its Guidelines gave "WMATA 'unfettered discretion' to decide what the Guidelines permit and forbid. Opp. at 11-12 (quoting Mot. at 14). In effect, Plaintiffs contend that any denial of an allegation in the Complaint creates a factual dispute that forecloses judgment on the pleadings.

This argument has no basis in law. "[F]or purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Tapp v. WMATA*, 306 F. Supp. 3d 383, 392 (D.D.C. 2016) (citing 5c Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1369 (3d ed. 2004)). Thus, judgment on the pleadings can be entered even if a defendant disputes some of the factual allegations.

Moreover, Plaintiffs have alleged that WMATA exercises "unfettered discretion" in whether to accept or reject ads. Complaint ¶¶ 80-82. That is fatal to any contention that WMATA has waived sovereign immunity here. The exercise of discretion in applying the Guidelines – whether unfettered or not – forecloses the argument that WMATA's administration of the Guidelines is purely ministerial and, thus, proprietary. *Banneker*, 798 F.3d at 1138-39.

In addition, Plaintiffs' first three claims for relief contend the Guidelines are facially unconstitutional. That challenges WMATA's adoption of the Guidelines and its decisions about how to implement them, not just how they are applied to individual ads. That kind of decision-making – selecting which categories of ads are prohibited, drafting the guidelines, creating a framework for evaluating if ads violate the Guidelines – is quintessentially governmental. Nothing in WMATA's denial of the allegations that it exercises "unfettered discretion" to accept

or reject specific ads creates any material factual dispute that would foreclose a finding that WMATA's conduct in ***adopting*** the Guidelines is immune from challenge.

In any event, WMATA's denial of the allegation that it had "unfettered discretion" in its advertising decisions (Complaint ¶¶ 80-82) does not create any material dispute that would defeat WMATA's argument that its conduct is governmental.  WMATA denies exercising "unfettered discretion"; it fully admits that the adoption and application of the Guidelines involves ***some*** discretion.  Thus, WMATA's denial of Plaintiffs' allegations poses no impediment to granting judgment on the pleadings in favor of WMATA.

Fourth, relying on two wrongful death cases, Plaintiffs argue that WMATA's sovereign immunity does not apply because "the Constitution provides nondiscretionary standards that (taking Plaintiffs' allegations as true) WMATA has failed to meet."  Opp. at 12.  That makes no sense.  Any alleged constitutional violation could be asserted as a violation of some non-discretionary standard set by the Constitution.  In effect, Plaintiffs are arguing that sovereign immunity can never be asserted to bar a constitutional claim.

Plaintiffs are wrong.  Sovereign immunity extends to constitutional claims.  *See, e.g.*, *Sanders v. WMATA*, 819 F.2d 1151, 1156 (D.C. Cir. 1987) ("WMATA is immune from suit on all of appellants' constitutional and § 1983 grounds"); *McMillan v. WMATA*, 898 F. Supp. 2d 64, 69-70 (D.D.C. 2012) ("WMATA is immune from suit based upon Plaintiff's constitutional claims."); *see also Morris v. WMATA*, 583 F. Supp. 1522, 1526 (D.D.C. 1984) (rejecting argument that WMATA could not assert Eleventh Amendment immunity to plaintiff's free speech claim, holding "[i]f an entity does have Eleventh Amendment immunity, it makes no difference that the claim is founded on the Constitution."), *aff'd*, 781 F.2d 218 (D.C. Cir. 1986).  Any notion that a constitutional claim falls outside the scope of WMATA's immunity contravenes these authorities.

Neither of the cases Plaintiffs cite as support for this "constitutional" limit on sovereign immunity supports their argument. Neither *Harris v. WMATA*, 490 F. Supp. 3d 295 (D.D.C. 2020), nor *Whiteru v. WMATA*, 258 F. Supp. 3d 175 (D.D.C. 2017), involved constitutional claims. In *Harris*, the court held that WMATA had no discretion to fail to provide medical assistance, because WMATA had a common-law duty to render aid to an invitee on its premises. 490 F. Supp. 3d at 315-16, 318-19. In *Whiteru*, the court held that WMATA had no sovereign immunity because its employee had no discretion to deviate from WMATA's policies requiring employees to inspect platforms. 258 F. Supp. 3d at 185-90 (policy "does not permit station managers to deviate from the procedure if it is not feasible to follow it; instead, [policy] makes crystal clear that the station manager *must* inspect the train platform in person, and that special attention *must* be paid to certain areas of the platform."). Neither case involved conduct or policies remotely similar to the issues in this case.

Accordingly, this Court should hold that sovereign immunity bars Plaintiffs' claims against WMATA and should enter judgment on the pleadings for WMATA.

## III.   THE SIXTH CLAIM FOR RELIEF SHOULD BE DISMISSED BECAUSE THE *ACCARDI* DOCTRINE DOES NOT APPLY TO WMATA.

Plaintiffs' Sixth Claim for Relief consists of two paragraphs. Each alleges: "By refusing to accept and display [Carafem's/Milo Worldwide's] advertisement on the ground that it violated those Guidelines, WMATA failed to follow its own regulations, in violation of the '*Accardi* doctrine.' " Complaint ¶¶ 98-99. As Defendants established in their Motion, the *Accardi* doctrine applies only to federal agencies. Mot. at 15-17. It does not apply to WMATA because WMATA is not a federal agency. Therefore, the *Accardi* doctrine provides no independent claim for relief based on WMATA's alleged failure to follow its own policies.

Plaintiffs' Opposition misses that point.  Despite specifically alleging a claim only under the *Accardi* doctrine, which applies to federal agencies, Plaintiffs now argue more generally that they can bring an action over any government agency's failure to follow its own procedures. That, however, is not the claim Plaintiffs pleaded and they cannot rewrite the Complaint now. *Jones*, 168 F. Supp. 3d at 181 (rejecting a plaintiff's attempt to amend his Complaint through his Opposition to the Motion for Judgment on the Pleadings); *Cohen*, 311 F. Supp. 3d at 260 (same).

Even if the Court considers this new argument, it should be rejected as unsupported by Plaintiffs' authorities.  For instance, Plaintiffs cite to cases holding that Congress must follow its own rules, but they did not involve independent claims against Congress.  The issue arose in connection with prosecutions for criminal proceeding for contempt of Congress, *Yellin v. United States*, 374 U.S. 109 (1963), and perjury before Congress, *Christoffel v. United States*, 338 U.S. 84 (1949).  While it was proper for a Court, in deciding if the convictions should be upheld, to consider whether Congress followed its own rules, that is entirely different than saying a plaintiff may bring a civil action against Congress for failing to do so.[1]

Equally meritless is Plaintiffs' argument that the *Accardi* doctrine was applied to non-federal entities in *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995), and *Women's Health Link, Inc. v. Fort Wayne Public Transportation Corp.*, 826 F.3d 947 (7th Cir. 2016).  The *Rosenberger* plaintiff alleged a public university's policies violated its First Amendment right of free exercise of religion.  The Court considered whether the university applied its own policies as part of deciding the First Amendment claim under section 1983.  *Id.*

---

[1] These cases also long predate *Accardi.*

at 827, 829.  *Rosenberger* did not treat a "failure to follow its own policy" as a separate and distinct claim for relief.

Similarly, *Women's Health Link* was a challenge to a transit authority's refusal to run an ad.  The court describes the claims before it as alleging "among other violations of constitutional rights, arbitrarily denying freedom of expression, the arbitrariness consisting in the fact that Health Link's proposed ad complies fully with the conditions set forth in Citilink's rules." *Women's Health Link*, 826 F.3d at 950.  Thus, the Seventh Circuit's analysis of whether the transit agency followed its own policies was part of its First Amendment analysis, not an independent claim for relief.

Plaintiffs' remaining authority involved claims against federal entities – entities to which the *Accardi* doctrine applies.  *Ballard v. Comm'r*, 544 U.S. 40 (2005) (reviewing a decision of the Tax Court); *Wilkinson v. Legal Services Corp.*, 27 F. Supp. 2d 32 (D.D.C. 1998) (suit by former Inspector General against Legal Services Corporation contesting his termination); *Massachusetts Fair Share v. Law Enforcement Assistance Admin.*, 758 F.2d 708 (D.C. Cir. 1985) (challenge to federal agency's denial of a grant following exhaustion of administration remedies in proceedings before the Department of Justice); *VanderMolen v. Stetson*, 571 F.2d 617 (D.C. Cir. 1977) (plaintiff's suit for wrongful termination from the Air Force).  These cases are fully consistent with the "settled" rule "that a ***federal agency*** must adhere firmly to self-adopted rules by which the interests of others are to be regulated."  *Massachusetts Fair Share*, 758 F.2d at 711 (emphasis added).

None of Plaintiffs' authorities supports their conclusion that they can bring a claim for relief predicated solely on WMATA's alleged failure to follow its own procedures.  *Accardi* does not apply because it arises out of principles of administrative law rather than constitutional law

binding upon the States.[2]  *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8 (1978); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 103 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) ("*Accardi* is based on administrative law principles, not constitutional due process requirements.").  And none of Plaintiffs' other cases establishes the right of a plaintiff to bring an independent claim for relief against a non-federal agency like WMATA for failing to follow its own policies.

In sum, Plaintiffs: (1) cannot rewrite their Complaint to allege a claim for failure to follow agency policy separate from the inapplicable *Accardi* doctrine; and (2) even if they could, there is no support for the proposition that WMATA's failure to follow its own policy gives rise to an independent claim for relief.  This Court should grant judgment on the pleadings for Defendants on Plaintiffs' Sixth Claim for Relief.

## IV.    PLAINTIFFS LACK STANDING TO CHALLENGE GUIDELINE 13.

In the Motion (at 17-19), Defendants established that Plaintiffs have not sufficiently pled standing to challenge Guideline 13.  The only factual allegation that even arguably implicates Guideline 13 relies solely on a statement from WMATA's contractor suggesting PETA make changes to one of its ads in a manner that might have circumvented Guideline 13.  Complaint ¶ 70.  Yet the Complaint immediately follows that by asserting that WMATA rejected that ad under Guideline 9.  *Id.* ¶ 71.  Those allegations do not support a plausible inference that the ad

---

[2] Plaintiffs argue that *Accardi* did not involve the Administrative Procedure Act ("APA") because it was a habeas corpus action.  Opp. at 14.  But *Accardi* asserted that a federal agency – the Board of Immigration Appeals – failed to follow its own regulations in refusing to suspend petitioner's deportation.  *Accardi*, 347 U.S. at 268.  Plainly, it implicated administrative law because the regulations must have been promulgated under the APA.  Thus, *Accardi* is consistent with cases recognizing that an agency's failure to follow its own regulations can be challenged under the APA.  *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988); *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 642 (10th Cir. 1990).

was actually rejected under Guideline 13 and, thus, PETA – let alone any other Plaintiff – has not sufficiently pled an injury in fact from the application of Guideline 13.

"[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) (internal quotations and citations omitted). Plaintiffs "must 'allege . . . facts essential to show jurisdiction. If [they] fai[l] to make the necessary allegations, [they have] no standing.' " *Id*. (quoting *McNutt v. Gen. Motors Acceptance Corp*., 298 U.S. 178, 189 (1936)) (alterations and omissions in original). Standing "cannot be inferred argumentatively from averments in the pleadings," but "must affirmatively appear in the record." *Id.* (internal quotations and citations omitted).

Plaintiffs try to salvage this claim by arguing it is enough that the contractor suggested the ad might be struck down on grounds consistent with Guideline 13 and that, hypothetically, Guideline 13 might be used to reject the ads in the Complaint in the future if Guideline 9 is struck down. Opp. at 16, 18. The Complaint, however, expressly admits that PETA was told that WMATA rejected the ad based on Guideline 9, not Guideline 13. Complaint ¶ 71. That Defendants have not affirmatively disclaimed enforcement of Guideline 13 – which would be improper in a Motion for Judgment on the Pleadings – does not give rise to an inference that WMATA relied on Guideline 13 in rejecting the PETA ads identified in the Complaint.

In addition, Plaintiffs suggest that Defendants have admitted that WMATA relied on Guideline 13 by not denying the allegation that PETA's advertisements violated Guideline 13. Opp. at 19 (citing Answer (ECF 20) at ¶¶ 71, 75). Paragraph 71 of the Complaint alleges:

> On November 8, 2016, Outfront informed PETA that WMATA had rejected the advertisement based on Guideline 9. As Outfront's earlier message suggested, the

advertisement also violated Guideline 13, as it opposed the food industry's
position that people should eat meat, fish, poultry, dairy products, and other non-
vegan foods, "without any direct commercial benefit to" PETA.

Complaint at ¶ 71.  Defendants' Answer responds:

> WMATA admits that the PETA advertisement described in paragraph 71 was
> rejected because it violated WMATA's Guidelines.  WMATA is without
> knowledge or information sufficient to form a belief as to the truth of the
> remaining allegations of paragraph 71 and therefore denies them.

Answer (ECF 20) at ¶ 71.

That same answer – admitting that certain PETA ads were rejected "because they violated

WMATA's Guidelines" and asserting that Defendants lack knowledge sufficient to address the

rest of the allegation – was also given in response to paragraph 75 of the Complaint where

Plaintiffs allege that PETA submitted three ads that Outfront told PETA were rejected "as issue-

oriented and 'not permissible by WMATA guidelines.' "  Complaint at ¶ 75.  Paragraph 75 also

alleges that "[t]hese advertisements also violated Guidelines 4 and 13[,]" *id*. at ¶ 75, but

Defendants neither admit nor deny that portion of the allegation.  Thus, Defendants' Answer

provides no basis to conclude Plaintiffs have been injured through the application of Guideline

13.

Finally, Plaintiffs argue that they satisfy the standing requirement because there is a

"substantial risk" of future injury.  Opp. at 20-21.  The D.C. Circuit recently explained that, to

satisfy the "substantial risk" standard for standing, a plaintiff must show "*both* (i) a *substantially*

increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into

account." *New Jersey v. Env't Prot. Agency*, 989 F.3d 1038, 1047 (D.C. Cir. 2021)[3] (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015) (original emphasis).

Plaintiffs' Complaint does not come close to satisfying this standard. It contains no allegations that there is a "substantial risk" that WMATA will apply Guideline 13 to PETA's – or any other Plaintiff's – ads, let alone that there is a "substantially increased risk of harm" and a "substantial probability" of harm due to future application of Guideline 13. Plaintiffs simply have not carried their burden of alleging standing due to a "substantial risk" of future injury.

Plaintiffs' cases do not change this conclusion. *Susan B. Anthony List v. Driehaus* applied a "substantial risk" test applicable when a party faces possible criminal sanction under a challenged statute. 573 U.S. 149, 158 (2014). In *Dep't of Commerce v. New York*, the Supreme Court ruled a district court was not clearly erroneous in finding that, if the decennial census asked a citizenship question, response rates would decline, resulting in injuries to the plaintiff states and local governments as well as non-governmental organizations. 139 S. Ct. 2551, 2565 (2019). *New Jersey* found that the record supported a finding that loosening of pollution regulations created a substantial risk of increased unlawful cross-state emissions that would harm the plaintiffs. 989 F.3d at 1048-49. None of these cases support a conclusion that Plaintiffs' Complaint sufficiently alleges facts demonstrating a substantially increased risk of harm and a substantial probability of harm to PETA from an advertising guideline that has not been applied to the PETA's ads identified in the Complaint.

Accordingly, Plaintiffs lack standing to challenge Guideline 13.

_____

[3] Plaintiffs cite *New Jersey* for the proposition that the D.C. Circuit has "frequently" found standing based on allegations of a substantial risk of future injury to the plaintiff. Opp. at 20. But that statement is meaningless divorced from the actual test the D.C. Circuit employs to determine when a "substantial risk" exists. Plaintiffs simply ignore that portion of the case.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion for Judgment on the Pleadings, dismiss all claims by Milo Worldwide as moot, dismiss all claims against WMATA on the grounds of sovereign immunity, dismiss the Sixth Claim for Relief, and dismiss all claims based on Guideline 13.

Date:   April 19, 2021                     Respectfully submitted,

                                           CALG LLP

                                           AKIN GUMP STRAUSS HAUER & FELD LLP

                                           By: */s/ Rex S. Heinke*_____ _
                                                  Rex S. Heinke
                                                    (D.C. Bar No. CA00080)
                                                  Jessica M. Weisel (pro hac vice)
                                                  CALG LLP
                                                  811 Wilshire Blvd., 17th Floor
                                                  Los Angeles, CA 90017
                                                  Telephone: (213) 878-0404
                                                  rex.heinke@calapplaw.com
                                                  jessica.weisel@calapplaw.com

                                                  Anthony Pierce
                                                    (D.C. Bar No. 415263)
                                                  Caroline L. Wolverton
                                                    (D.C. Bar No. 496433)
                                                  Akin Gump Strauss Hauer & Feld LLP
                                                  2001 K Street, N.W.
                                                  Washington, D.C. 20006
                                                  Telephone: (202) 887-4000
                                                  cwolverton@akingump.com

                                                  Attorneys for Defendants

17