UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, *et al.*,<br><br>   Plaintiffs,<br><br>   v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, *et al.*,<br><br>   Defendants. | Civil Action No. 17-1598 (TSC) |

**MEMORANDUM OPINION**

Plaintiffs American Civil Liberties Union ("ACLU"), Femhealth USA, Inc., d/b/a Carafem ("Carafem"), MILO Worldwide LLC ("Milo Worldwide"), and People for the Ethical Treatment of Animals, Inc. ("PETA") have sued the Washington Metropolitan Area Transit Authority ("WMATA") and its former General Manager, Paul J. Wiedefeld. Plaintiffs allege that in refusing to post certain advertisements, Defendants violated Plaintiffs' constitutional rights and WMATA's own regulations. WMATA has moved for judgment on the pleadings with respect to certain claims. *See* ECF No. 64 ("MJP"). For the reasons set forth below, the court will GRANT in part and DENY in part WMATA's motion.

   I.   **BACKGROUND**

Much of the relevant background of this case is set forth in the court's prior decision denying Milo Worldwide's Motion for Preliminary Injunction. *See* Memorandum Opinion at 2–6, ECF No. 27. In sum, Plaintiffs allege that they sought to place certain advertisements in the WMATA metrorail system, but were refused when WMATA decisionmakers concluded that the proposed advertisements violated WMATA's Guidelines Governing Commercial Advertising

("Guidelines"). *See* Compl. ¶¶ 22–31, ECF No. 1 (ACLU advertisements rejected as "issue oriented advertising"); *id.* ¶¶ 32–48 (Carafem advertisements rejected as "in violation of Guideline 4"); *id.* ¶¶ 49–67 (Milo Worldwide advertisements rejected as "violat[ing] guidelines #9 and #14"); *id.* ¶¶ 68–77 (PETA advertisements rejected "based on Guidelines Nos. 9 and 14"). Plaintiffs argue that those refusals violated the First and Fifth Amendments of the U.S. Constitution, as well as the *Accardi* doctrine, and assert corresponding claims against WMATA and Wiedefeld under 42 U.S.C. § 1983. *Id.* ¶¶ 7, 78–99.

## II. LEGAL STANDARD

The standard for reviewing a Rule 12(c) motion for judgment on the pleadings "essentially mirrors" the standard for a 12(b)(6) motion to dismiss. *Tapp v. Washington Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016). "[T]he moving party must show that no material issue of fact remains to be solved and that it is entitled to judgment as a matter of law." *Jud. Watch, Inc. v. U.S. Dep't of Energy*, 888 F. Supp. 2d 189, 191 (D.D.C. 2012) (citation omitted). The court presumes the truth of a plaintiff's factual allegations and construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation omitted).

## III. ANALYSIS

WMATA contends (1) that Milo Worldwide's claims are moot, (2) that sovereign immunity shields it from all of Plaintiffs' § 1983 claims, (3) that it is not governed by the *Accardi* doctrine, and (4) that Plaintiffs lack standing to challenge its Guideline 13. The court agrees with the second and third contentions but rejects the first and fourth.

A. **Milo Worldwide claims**

A claim "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Sanchez v. Office of the State Superintendent of Education*, 959 F.3d 1121, 1125 (D.C. Cir. 2020) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). Milo Worldwide's proposed advertisements were for the book *Dangerous* by Milo Yiannopoulos, which was published on July 4, 2017. Compl. ¶¶ 49–50. There is no dispute that *Dangerous* remains in print, or that advertisements could boost its sales. *Compare* Opp'n to MJP at 7–9, ECF No. 65, *with* Reply at 3–4, ECF No. 66. Therefore, the relief that Milo Worldwide seeks—declaring its advertisements permissible and ordering WMATA to display them, Compl. ¶¶ B–D—could still yield benefits. The fact that Milo Worldwide originally intended the advertisements to coincide with the book's publication, or that the original timing could have produced greater benefits than delayed advertising does not alter this conclusion. *See* MJP at 8–9 (citing Compl. ¶¶ 66–67). What matters is that "Milo Worldwide wants its advertisements to be re-posted," Compl. ¶ 67, and that doing so could provide Milo Worldwide with some measure of relief. The passage of time has therefore not mooted its claims, and the court will not dismiss them on that ground.

B. **WMATA immunity**

Because it was created by an interstate compact between Virginia, Maryland, and the District of Columbia, WMATA is covered by their "respective sovereign immunities." *Watters v. WMATA*, 295 F.3d 36, 39 (D.C. Cir. 2002). WMATA asserts its immunity here, and neither § 1983 nor the interstate compact waives that immunity with respect to Plaintiffs' claims. As a result, the court will dismiss all claims against WMATA.

1. Section 1983 waiver

Section 1983 does not waive WMATA's sovereign immunity. It permits claims against "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" deprives another person of their constitutional "rights, privileges, or immunities." 42 U.S.C. § 1983. But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). WMATA argues—and Plaintiffs do not respond—that WMATA "likewise is not a 'person' for purposes of Section 1983" because it was created by Virginia, Maryland, and the District of Columbia. MJP at 10–11; *see* Opp'n to MJP at 9–13; *see also Johnson v. D.C.*, 49 F. Supp. 3d 115, 121–22 (D.D.C. 2014) ("[I]t is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (quotation omitted). Plaintiffs therefore cannot rely on § 1983 to permit their claims against WMATA.

2. Interstate compact waiver

Moreover, section 80 of the interstate compact creating WMATA does not waive sovereign immunity with respect to Plaintiffs' claims. It provides that WMATA "shall be liable for its contracts and for its torts . . . committed in the conduct of any proprietary function, . . . , but shall not be liable for any torts occurring in the performance of a governmental function." D.C. Code § 9–1107.01(80). WMATA does not contest—and the court therefore assumes—that Plaintiffs' claims qualify as "constitutional torts." *Compare* Opp'n to MJP at 9–10, *with* Reply at 4–10; *see, e.g.*, *Memphis Community School District v. Stachura*, 477 U.S. 299, 305–06 (1986) (discussing constitutional torts).

The operative question, then, is whether Plaintiffs allege torts "committed in the conduct of any proprietary function" rather than "in the performance of a governmental function." D.C. Code § 9–1107.01(80). The D.C. Circuit has explained how to approach that question in this context:

> "Because it is difficult to distinguish between public and private sector functions with any precision," we ask whether the claim seeks to impose liability for conduct that is discretionary, in which case the claim is barred by immunity, or ministerial, in which case the claim may proceed.

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1138 (D.C. Cir. 2015) (quoting *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997)).

Courts in this Circuit "apply a two-part test to determine whether WMATA's conduct is immunized as discretionary. *Id.* First, the court must ask "whether 'any statute, regulation, or policy specifically prescribes a course of action for an employee to follow.' If the tort claim arises from a WMATA employee's failure to act as the law specifically prescribes, the conduct is not shielded by immunity." *Id.* (quoting *KiSKA Const. Corp. v. Washington Metro. Area Transit Auth.*, 321 F.3d 1151, 1159 (D.C. Cir. 2003)). Second, "[i]f the law leaves the conduct in question to the official's discretion, we then ask 'whether the exercise of discretion is grounded in social, economic, or political goals.' Only actions grounded in such discretion retain 'governmental function' immunity." *Id.* (same).[1]

---

[1] Rather than confront this test, Plaintiffs largely rely on a handful of decades-old cases that use the word "proprietary" when referring to transit authorities' commercial advertising. *See* Opp'n at 10–11 (citing *Lehman v. City of Shaker Heights,* 418 U.S. 298, 304 (1974); *Lebron v. Nat'l R.R. Passenger Corp.*, 69 F.3d 650 (2d Cir.), *amended on denial of reh'g*, 89 F.3d 39 (2d Cir. 1995); *Lebron v. WMATA*, 665 F. Supp. 923, 935 (D.D.C. 1987); *Gay Activists Alliance v. WMATA*, 1979 BL 154, 5 Media L. Rep. (BNA) 1404 (D.D.C. 1979)). But *Lehman* and *National R.R. Passenger Corp.* did not concern WMATA or its interstate compact, so did not speak to the particular meaning "proprietary" has been given in Section 80's waiver. And neither of the decisions from this District applied the D.C. Circuit's governing standard. The court therefore finds the citations unpersuasive.

Applying this test, the court finds that WMATA's advertising regime involves discretionary rather than ministerial conduct. First, Plaintiffs point to no law that requires WMATA to permit commercial advertising, much less any legal requirements that WMATA employees structure or administer that advertising in a specific way. It is not enough, as Plaintiffs assert, that the "Constitution provides . . . background legal principles"—here, First Amendment doctrine—governing WMATA's advertising operation. Opp'n at 12. The broad constitutional protections for free speech may *proscribe* certain government conduct, but they do not "specifically *prescribe* a course of action for [WMATA] to follow" in choosing whether and how to advertise. *Banneker*, 798 F.3d at 1138 (emphasis added); *see, e.g.*, *KiSKA*, 321 F.3d at 1160 (holding that general legal requirements of clarity and accuracy did not prescribe a course of action). Indeed, if Plaintiffs were right that the Constitution's "background legal principles" were enough to waive immunity, then no constitutional claim against WMATA would ever be barred—a result that courts in this Circuit have repeatedly rejected. *See, e.g.*, *Sanders v. WMATA*, 819 F.2d 1151, 1156 (D.C. Cir. 1987) (finding WMATA immune from constitutional claims); *McMillan v. WMATA*, 898 F. Supp. 2d 64, 69–70 (D.D.C. 2012) (same).

As for the second part of the test, Plaintiffs do not meaningfully dispute that WMATA's commercial advertising operations are "grounded in social, economic, or political goals." *Banneker*, 798 F.3d at 1138 (quoting *KiSKA*, 321 F.3d at 1159); *see* Opp'n to MJP at 9–13. Nor could they: The D.C. Circuit recently recounted how WMATA expressly weighed "economic benefit," "community opposition and outcry," "security concerns," "vandalism," and other related factors in developing the same advertising regime Plaintiffs challenge. *Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 897 F.3d 314, 319–20 (D.C. Cir. 2018); *see also American Freedom Defense Initiative v. WMATA*, 901 F.3d 356, 359–61 (D.C. Cir.

2018). WMATA accordingly retains its "governmental function" immunity with respect to its commercial advertising operations.

Section 80 of the interstate compact thus does not waive WMATA's sovereign immunity here, and all claims against WMATA will be dismissed.

C. *Accardi* doctrine

Plaintiffs' Sixth Claim for Relief—that Defendants violated the *Accardi* doctrine—is inapposite here. The *Accardi* doctrine requires federal administrative agencies to follow their "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Thus, under the doctrine, an "[a]gency's failure to follow its own regulations can be challenged under the APA." *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988). But as the product of an interstate compact, WMATA is not a federal administrative agency and is therefore not subject to the APA. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8 (1978) (noting that the *Accardi* doctrine "enunciate[s] principles of federal administrative law rather than of constitutional law binding upon the States"); *see, e.g.*, *Osorio v. Gallo*, 2020 WL 1531300, at *4, n.2 (D. Conn. Mar. 31, 2020) (holding that "the *Accardi* Doctrine is irrelevant" where "claims do not involve federal agency action or administrative regulations"). As a result, the *Accardi* doctrine finds no purchase here.

Plaintiffs fall back on the broad principle "that a government entity must obey its own rules" and cite to a variety of cases in which courts have required as much. *See* Opp'n to MJP at 14–16. But those cases courts considered entities' adherence to their rules in the context of other, independent causes of action; none of them recognized the *Accardi* doctrine or any similar principle as providing a freestanding basis for suing government entities. *See, e.g.*, *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995) (considering state university's adherence to own rules for purposes of First Amendment claim brought under § 1983); *Yellin v.*

*United States*, 374 U.S. 109 (1963) (considering Congress's adherence to own rules for purposes of criminal contempt of Congress proceeding). In any event, the Complaint pleads only a violation of the *Accardi* doctrine, not some broader cause of action. See Compl. ¶¶ 98–99. A "[p]laintiff may not amend his Complaint through his Opposition to the Motion for Judgment on the Pleadings, and the Court need not consider any claims presented for the first time in his opposition." *Jones v. Castro*, 168 F. Supp. 3d 169, 181 (D.D.C. 2016). The court will therefore dismiss Plaintiffs' Sixth Claim for Relief.

### D. Guideline 13 standing

Finally, WMATA argues that Plaintiffs lack standing to challenge its Guideline 13, which provides that "[a]dvertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser are prohibited." Compl. ¶ 18. "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). However, "an allegation of future injury may suffice if . . . there is a substantial risk that the harm will occur." *Id.* at 158 (quotations omitted).

Plaintiffs have sufficiently alleged that PETA faces a substantial risk of at least one of its advertisements being rejected under Guideline 13, and that is sufficient for the challenge to proceed. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 9 (D.C. Cir. 2017) ("If constitutional standing can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim.") (quotation omitted). The advertisement in question "depicted a pig, with accompanying text reading, 'I'm ME, Not MEAT. See the Individual. Go Vegan.'" Compl. ¶ 69. The Complaint asserts that while WMATA formally rejected PETA's

advertisement under Guideline 9, the advertisement would also have violated Guideline 13. *Id.* ¶ 71. Indeed, earlier communications from WMATA's advertising contractor suggested that the advertisement would be more likely accepted if its content were modified to include a "commercial value"—a consideration under Guideline 13, not 9. *Id.* ¶ 70. Drawing all reasonable inferences in Plaintiffs' favor, those allegations suggest a substantial risk that even if the court struck down Guideline 9, the advertisement would be rejected under Guideline 13. That is enough to support PETA's standing to challenge Guideline 13.

## IV.   CONCLUSION

For these reasons, the court will GRANT in part and DENY in part Defendants' Motion for Judgment on the Pleadings. Specifically, the court will dismiss all claims against WMATA and dismiss Plaintiffs' Sixth Claim for Relief, but permit all other parties and claims to proceed. A corresponding Order will accompany this Memorandum Opinion.

Date: July 28, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge